## McDANIELS v. McDANIELS.

(Third Division. Valdez. April 26, 1914.)

No. 645.

DIVORCE ⬯22—MARRIAGE ⬯20(1).

About November 15, 1910, defendant procured a marriage license from the authorities at Vancouver, B. C., authorizing the plaintiff and defendant to intermarry. Plaintiff was a woman of foreign birth, unfamiliar with the English language and customs. She was informed by the defendant that said paper or marriage license was all the formality or ceremony necessary to constitute marriage. Plaintiff agreed with the defendant to become his wife, and they resided together, openly and notoriously, as husband and wife from that time till this suit was brought for divorce. *Held*, the parties were married by contract or common-law marriage, and that the plaintiff was entitled to the divorce prayed for.

This is an action brought by the plaintiff to secure a divorce from defendant on the ground of habitual gross drunkenness, or to annul the marriage contract claimed to have been entered into between plaintiff and defendant on or about November 15, 1910, at Vancouver, B. C.

Defendant was personally served with summons and complaint within the jurisdiction of this court, and, failing to appear or make any answer, is in default.

The testimony of plaintiff and her witnesses shows that the plaintiff has been a bona fide resident of the territory of Alaska for more than two years prior to the commencement of this action; that about November 15, 1910, at Vancouver, B. C., defendant procured a marriage license from British

---

⬯See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Columbia officials, authorizing the said defendant, Harry E. McDaniels, to marry the plaintiff, Marie Lakson; that the plaintiff is a woman of foreign birth, and was unfamiliar with the English language and customs, and was informed by defendant that the said paper or marriage license was all the formality or ceremony that was necessary to constitute their marriage, and thereupon plaintiff and defendant entered into the marriage relation, and until about a year prior to the bringing of this action they cohabited together as man and wife, openly and notoriously.

E. E. Ritchie, of Valdez, for plaintiff.

Guy B. Brubaker, Asst. Dist. Atty., for the United States.

BROWN, District Judge.   Section 431, Compiled Laws of Alaska, provides:

"Marriage is a civil contract, which may be entered into by males of the age of twenty-one years and females of the age of eighteen years who are otherwise capable."

In this case the parties were both of age and there was no legal impediment to their entering into the marriage contract, and in the absence of any proof to the contrary it must be presumed that the laws of British Columbia, where this marriage relation was entered into are the same as the laws of this jurisdiction.

See, also, 26 Cyc. 878; Reaves v. Reaves, 15 Okl. 254, 82 Pac. 495, 2 L. R. A. (N. S.) 360, as follows:

"In Meister v. Moore, 96 U. S. 76, 24 L. Ed. 826, the Supreme Court of the United States makes use of the following language: 'The learned judge of the Circuit Court instructed the jury that, if neither a minister nor a magistrate was present at the alleged marriage of William A. Mowry and the daughter of the Indian Pero, the marriage was invalid under the Michigan statute, and this instruction is now alleged to have been erroneous.  It certainly withdrew from the consideration of the jury all evidence, if any there was, of informal marriage by contract, per verba de præsenti.  That such a contract constitutes a marriage at common law there can be no doubt, in view of the adjudication made in this country from its earliest settlement to the present day.   Marriage is everywhere regarded as a civil contract.   Statutes in many of the states, it is true, regulate the mode of entering into the contract; but they do not confer the right.   Hence they are not within the principle that, where a statute creates a right and provides a remedy for its enforcement, the remedy is exclusive.  No doubt a statute may take away a common-law right; but there is always a presumption that the Legislature has no such intention,

unless it be plainly expressed. A statute may declare that no marriages shall be valid, unless they are solemnized in a prescribed manner; but such an enactment is a very different thing from a law requiring all marriages to be entered into in the presence of a magistrate or a clergyman, or that it be preceded by a license, or publication of banns, or be attested by witnesses. Such formal provisions may be construed as merely directory, instead of being treated as destructive of a common-law right to form the marriage relation by words of present assent. And such, we think, has been the rule generally adopted in construing statutes regulating marriage. Whatever directions they may give respecting its formation or solemnization, courts have usually held a marriage good at common law to be good notwithstanding the statutes, unless they contain express words of nullity. This is the conclusion reached by Mr. Bishop after an examination of the authorities. Bishop, Marr. & Div. § 283, and notes. We do not propose to examine in detail the numerous decisions that have been made by the state courts. In many of the states enactments exist very similar to the Michigan statute; but their object has manifestly been, not to declare what shall be requisite to the validity of a marriage, but to provide a legitimate mode of solemnizing it. They speak of the celebration of its rite, rather than of its validity, and they address themselves principally to the functionaries they authorize to perform the ceremony. In most cases the leading purpose is to secure a registration of marriages, and evidence by which marriages may be proved; for example, by certificate of a clergyman or magistrate, or by an exemplification of the registry. In a small number of the states, it must be admitted, such statutes have been construed as denying validity to marriages not formed according to statutory directions. Notably has this been so in North Carolina and in Tennessee, where the statute of North Carolina was in force. But the statute contained a provision declaring null and void all marriages solemnized as directed without a license first had. So, in Massachusetts, it was early decided that a statute very like the Michigan statute rendered illegal a marriage which would have been good at common law, but which was not entered into in the manner directed by the written law. Milford v. Worcester, 7 Mass. 48. It may well be doubted, however, whether such is now the law in that state. In Parton v. Henry, 1 Gray [Mass.] 119, where the question was whether the marriage of a girl only thirteen years old, married without parental consent, was a valid marriage (the statute prohibiting clergymen and magistrates from solemnizing marriages of females under eighteen without the consent of parent or guardian), the court held it good and binding, notwithstanding the statute. In speaking of the effect of statutes regulating marriage, including the Massachusetts statute (which, as we have said, contained all the provisions of the Michigan one), the court said: "The effect of these and similar statutes is not to render such marriages, when duly solemnized, void, although the statute provisions have not been complied with. They are intended as directory only on ministers and magistrates, and to prevent as far as possible, by penalties on them, the solemnization

of marriages when the prescribed conditions and formalities have not been fulfilled. But, in the absence of any provision declaring marriages not celebrated in a prescribed manner or between parties of certain ages absolutely void, it is held that all marriages regularly made according to the common law are valid and binding, though had in violation of the specific regulations imposed by statutes." There are two or three other states in which decisions have been made like that in 7 Mass. 48.'

"In 2 Greenleaf on Evidence, § 460, the author lays down the rule: 'Though in most, if not all, of the United States there are statutes regulating the celebration of the marriage rites, and inflicting penalties on all who disobey the regulations, yet it is generally considered that, in the absence of any positive statute declaring that all marriages not celebrated in a prescribed manner shall be void, or that none but certain magistrates or ministers shall solemnize a marriage, any marriage regularly made according to the common law, without observing the statute regulations, would still be a valid marriage.'

"In Maryland v. Baldwin, 112 U. S. 494, 5 Sup. Ct. 278, 28 L. Ed. 824, the court said: 'As the case must, for this error, go back for a new trial, it is proper to say that by the law of Pennsylvania, where, if at all, the parties were married, a marriage is a civil contract, and may be made per verba de præsenti; that is, by words in the present tense, without attending ceremonies, religious or civil. Such is also the law of many other states, in the absence of statutory regulation. It is the doctrine of the common law. But where no such ceremonies are required, and no record is made to attest the marriage, some public recognition of it is necessary as evidence of its existence. The protection of the parties and their children and considerations of public policy require this public recognition; and it may be made in any way which can be seen and known by men, such as living together as man and wife, treating each other and speaking of each other in the presence of third parties as being in that relation, and declaring the relation in documents executed by them whilst living together, such as deeds, wills, and other formal instruments. From such recognition the reputation will obtain of being married among friends, associates, and acquaintances, which is of itself evidence of a persuasive character. Without it the existence of the marriage will always be an uncertainty; and the charge of the court should direct the jury to its necessity, in the absence of statutory regulations on the subject. Otherwise, the jury would be without any guide in their deliberations.'

"In Mathewson v. Phœnix Iron Foundry [C. C.] 20 Fed. 281, the court said: 'At common law, as held in this country, and until recently, it would seem, as generally understood in England, persons of suitable age might, by words of present consent, contract a valid marriage without the presence and intervention of a minister, and without any particular form of solemnization. A statute may, of course, take away this common-law right; but this is not to be presumed. The right is not conferred by statute, but exists independent of it, and

therefore it is held the rule does not apply that, when a statute directs a thing to be done in a particular way, it is void if done in any other way. The construction usually adopted is that, when the statute regulating marriage is directory merely, when it does not expressly forbid other marriage contracts, a marriage per verba ˙de præsenti, or at common law, is good.' To the same effect are the following authorities: 2 Greenl. Ev. § 460; Kent, Com. 51; Reeve, Dom. Rel. 247; Bynon v. State, 117 Ala. 80, 23 South. 640, 67 Am. St. Rep. 163; Jones v. Jones, 28 Ark. 19; Hargroves v. Thompson, 31 Miss. 211; Hynes v. McDermott, 91 N. Y. 451, 43 Am. Rep. 677; Carmichael v. State, 12 Ohio St. 553.''

I am therefore of the opinion that the acts testified to by plaintiff constitute a common-law marriage between plaintiff and defendant, and, the testimony of the plaintiff and her witnesses further showing that sufficient cause for divorce existed, to wit, habitual gross drunkenness, contracted since marriage and continuing for one year prior to the commencement of this action, the plaintiff is entitled to a decree dissolving the bonds of matrimony existing between her and defendant. Findings and decree may be prepared accordingly.