## REED v. HARKRADER.

(Circuit Court of Appeals, Ninth Circuit.   May 3, 1920.)

No. 3347.

**1. Trial ⬤⇒260(5)—Request to charge as to legitimacy held covered.**

In an action of ejectment, where plaintiff's right depended on proof that her mother was a half-breed, a requested charge that, if the mother's mother was married to an Indian when the mother was born, the jury must disregard testimony that a white man was the father, was sufficiently covered by the charge that a child born during marriage is presumed to be legitimate, and that a person claiming the contrary must overthrow that presumption by clear and convincing proof.

**2. Marriage ⬤⇒13—Statute prescribing formalities does not invalidate common-law marriage.**

2 Hill's Ann. Laws Or. 1892, § 2856, prescribing formalities for marriage, but not making invalid a marriage not conforming thereto, does not invalidate a common-law marriage.

In Error to the District Court of the United States for the District of Alaska; Robert W. Jennings, Judge.

Ejectment by Elizabeth Harkrader against C. R. Reed.   Judgment for plaintiff, and defendant brings error.   Affirmed.

H. H. Folson and John R. Winn, both of Juneau, Alaska, for plaintiff in error.

A. H. Ziegler and Roden & Dawes, all of Juneau, Alaska, for defendant in error.

Before GILBERT and HUNT, Circuit Judges, and WOLVERTON, District Judge.

GILBERT, Circuit Judge.   The plaintiff in error was in the possession of a parcel of land in Juneau, Alaska, claiming to own the same through the will of George Harkrader, deceased.   The defendant in error brought ejectment, claiming that she was the only child and sole heir of George Harkrader, and that the will was void as to her for its failure to mention her.   It was conceded that under the law of Alaska, if a testator having a legitimate child devises his property by will without mention of the child, the will is, so far as she is concerned, void.   The controversy in the court below concerned only the question whether Elizabeth was the legitimate child of Harkrader and entitled to inherit his estate.

There was evidence for the defendant in error tending to show that in the year 1886 or 1887 Harkrader contracted and consummated a common-law marriage with a half-breed named Lilly Clark, and that the defendant in error was the sole living issue of that marriage. There was evidence for the plaintiff in error that Lilly Clark was not a half-breed, but a full-blooded Indian, the daughter of Kaklak and Emma Phillips, who were living together as man and wife; the purpose of the evidence being to show that a marriage between Lilly Clark and Harkrader was void under a statute which prohibited

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the marriage of a white person to a full-blooded Indian. As against this evidence, Emma Phillips, the mother of Lilly Clark, testified that the father of Lilly Clark was a white man named Henry Clark, with whom she had lived prior to her marriage to Kaklak. The jury found in a special verdict that Lilly Clark was a half-breed.

[1] It is assigned as error that the court refused to instruct the jury, that, if they found that Kaklak and Emma Phillips were husband and wife at the time when Lilly Clark was begotten or born, they must disregard all testimony of Emma Phillips that Clark was the father of Lilly, for the reason that Emma Phillips could not be heard to bastardize her daughter born in wedlock. We think the instructions given by the court sufficiently covered the points involved in the requested instruction. The court instructed the jury that—

"If a lawful marriage is had, the law presumes that any child which the woman had during the continuance of that marriage, or within nine months after it comes to an end, is a legitimate child. I will say the law presumes that, and any person who claims to the contrary must overthrow that presumption by clear and convincing proof. This is so, because the presumption of legitimacy in such a case would be one of the strongest presumptions of the law."

[2] One of the issues in the case was whether or not there had been a common-law marriage between Harkrader and Lilly Clark. Upon that issue the jury found by a special verdict that the relations were of such a character as to constitute a common-law marriage, as the term was defined by the court. Error is assigned to the refusal of the court to instruct the jury that at the time when the relations between Harkrader and Lilly Clark began there was no such thing in Alaska as a common-law marriage. The statute of Oregon, at that time in force in Alaska, provides as follows:

Section 2856: "In the solemnization of marriage, no particular form is required, except that the parties thereto shall assent or declare in the presence of the minister, priest, or judicial officer solemnizing the same, and in the presence of at least two attending witnesses, that they take each other to be husband and wife." 2 Hill's Ann. Laws, 1892.

That statute, at the time of its adoption for Alaska, had not been construed by the Supreme Court of Oregon. Nor has it since been construed. In Sturgis v. Sturgis, 51 Or. 10, 93 Pac. 696, 15 L. R. A. (N. S.) 1034, 131 Am. St. Rep. 724, however, it was held that, if the marriage of a ward takes place in Oregon without the consent of the guardian, it involves the violation of the law only as to the ceremony, form, or qualification, and that, although the violation of the law may subject the offender to punishment therefor, the marriage is not by reason thereof void. The English common law sanctioning informal marriages has almost universally been recognized in this country, notwithstanding statutory requirements of formalities. 18 R. C. L. 390. The Oregon statute does not declare that no marriage shall be valid unless solemnized in the prescribed manner. It is the usual statute which requires all marriages to be entered into in the presence of a minister or judge, and that it shall be preceded by a license and attested by witnesses.

"Such formal provisions may be construed as merely directory, instead of being treated as destructive of the common-law right to form the marriage relation by words of present assent, and this is the rule generally adopted in construing statutes regulating marriage. Whatever directions they may give respecting its formation or solemnization, the courts have usually held a marriage good at common law to be good, notwithstanding the statutes, unless they contain express words of nullity. This construction is not precluded by the fact that the statute in question imposes a penalty or even though the parties themselves may be punished criminally." 18 R. C. L. 398, and cases there cited.

That rule has been followed in the courts of the United States. Meister v. Moore, 96 U. S. 76, 24 L. Ed. 826; Travers v. Reinhardt, 205 U. S. 423, 27 Sup. Ct. 563, 51 L. Ed. 865; Mathewson v. Phoenix Iron Foundry Co. (C. C.) 20 Fed. 281; Davis v. Pryor, 112 Fed. 274, 50 C. C. A. 579; Sprung v. Morton (D. C.) 182 Fed. 330. And that such is the law in Alaska was held by Judge Brown in McDaniels v. McDaniels, 5 Alaska, 107. In view of these authorities, we think that the court below properly refused the requested instruction.

We are not persuaded otherwise by Holmes v. Holmes, 1 Sawy. 99, Fed. Cas. No. 6,638, cited by the plaintiff in error. In that case Judge Deady found that the parties who, it was claimed, had been united by a common-law marriage, were never in fact so married, that the facts indicated merely a meretricious relation. He also adverted to the statutes of Oregon requiring the observance of formalities, and said that without the observance of these the marriage relation, "it seems to me," could not be created in the state of Oregon. The remark was obiter, and was not based upon a review of the authorities other than a citation of decisions of the courts of two of the few states in which it is held that the statutes prescribing formalities are mandatory.

We find no error. The judgment is affirmed.