Willie EDWARDS, Appellant,

v.

Richard FRANKE, d/b/a Evergreen Memorial Chapel, Appellee.

No. 45.

Supreme Court of Alaska.
June 13, 1961.

M. Ashley Dickerson, Anchorage, for appellant.

John C. Hughes, Hughes & Thorsness, Anchorage, for appellee.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

AREND, Justice.

This is an action sounding in tort for the wrongful burial of the remains of a woman who, the plaintiff claims, was his common law wife, and also sounding in contract for specific performance of a burial contract.

We gather from the pleadings of the parties and other matters contained in the record that one Edith Edwards, also known as Edith Tatum, died at Anchorage, Alaska, on July 31, 1959. The plaintiff, Willie Edwards, thereupon entered into an oral agreement with the defendant, Richard Franke, doing business as Evergreen Memorial Chapel, that the latter should provide the funeral and burial of the deceased in consideration of the sum of $750, which sum was fully paid.

The plaintiff alleged in his complaint that under the terms of the agreement the funeral services and interment were to take place on August 8, 1959, but that the defendant, in violation of the agreement, allowed the body of Edith Edwards to be removed from the funeral chapel on August 7, 1959,

for a destination and purpose unknown to the plaintiff, thus depriving decedent of a Christian burial, to the mental anguish and impairment of the physical health of the plaintiff. Actual damages in the sum of $1,000 and exemplary damages in the sum of $4,000 were prayed for. The defendant denied any breach of contract and alleged that funeral services for the decedent were had according to the terms of the contract.

In a second cause of action, entitled "II—Amended Complaint to Compel Reinterment of Body", the plaintiff asked the trial court for an order directing the defendant to disinter the remains of Edith Edwards for a Christian burial and reinterment. The defendant denied the allegations of the second cause of action and asked that it be dismissed for failure to state a claim. By way of affirmative defense, he alleged that the entire complaint failed to state a claim upon which relief could be granted for the reason that the plaintiff was not a relative or a husband of the deceased and for the further reason that the claims alleged could enure only to the personal representative or kin of the deceased.

At the trial by jury, which commenced on July 25, 1960, the plaintiff testified that he had entered into a common law marriage with Edith in June of 1957 and that they then lived together as husband and wife until the time of her death. Over objection by the defendant that such a marriage could not be legally contracted in Alaska, the testimony was admitted provisionally. On July 26, 1960, the court ruled that the plaintiff was not the husband of the decedent and, therefore, could not claim any right as a surviving spouse or relative to bury the deceased. Accordingly, all testimony concerning a common law marriage was ordered stricken. In its decision the court went on to say that the plaintiff had failed to prove "any tortious action arising out of performance of the contract for burial"; that there had been no proof of ill will, malice or evil motive on the part of the defendant calling for an instruction on exemplary damages; and that the case would be given to the jury only on plaintiff's claim for relief arising out of breach of contract.

The case then went to the jury on special interrogatories as to whether there had been a breach of contract by the defendant. In chambers, court and counsel agreed that the issue of damages was not to be submitted to the jury, but, if the jury found for the plaintiff, then the court should order disinterment and reburial at the defendant's expense. On July 27, 1960, the jury returned with answers to the interrogatories favorable to the plaintiff, and the court, on September 2, 1960, entered a written order for disinterment and reburial at the defendant's expense but not to exceed the sum of $1,000.

It should be noted that on August 2, 1960, the defendant moved for judgment notwithstanding the verdict. The motion was heard and denied on the 19th day of August. In the meantime, on August 4, 1960, the plaintiff filed notice of appeal from the trial court's rulings of July 26. In a written memorandum decision, dated October 19, 1960, the court called attention to its ruling of July 26 against the tort claim of the plaintiff, found the expenses of reinterment under the claim for breach of contract to be in the sum of $795, and approved the same for payment by the defendant, and awarded costs and attorney's fee to the plaintiff. Judgment was entered accordingly on the date last mentioned.

■ We shall consider first the defendant's contention that this appeal is premature and should be dismissed because it was taken from rulings of the trial court made prior to the entry of a judgment. Plaintiff insists that the trial judge's decision of July 26 was an appealable judgment and not an interlocutory order, because it, in effect, dismissed one of the plaintiff's claims for relief, that is, the one sounding in tort. We do not regard that decision as a judgment from which an appeal might be taken.

The rules of this court provide that an appeal may be taken to the supreme court

only from a final judgment entered by the superior court or a judge thereof,[1] and that the time within which such an appeal may be taken shall be thirty days from the entry of the judgment appealed from.[2] In the light of those rules and the fact that there was no final disposition of the entire case, we cannot regard the court's decision of July 26 as a final judgment. To ascribe to it the dignity of a final judgment would be contrary to the general policy against allowing piecemeal appeals.[3] Nevertheless, this court did recognize the need in some cases involving multiple claims or multiple parties for allowing the entry of a final judgment as to one or more but fewer than all of the claims or parties, and so made provision therefor in Rule 54(b) of the Rules of Civil Procedure but only upon an express determination by the trial court that there is no just reason for delay and upon an express direction for the entry of judgment.[4] Counsel for the plaintiff evidently overlooked this special route to an early appeal in a multiple claims action.

■ However, in this case we do not consider the prematurity of the notice of appeal as fatal to the right of the plaintiff to be heard by us on the merits. Supreme Court Rule 52 specifically provides that

"These rules are designed to facilitate business and advance justice. They may be relaxed or dispensed with by this court where a strict adherence to them will work surprise or injustice."

There is nothing in the record before us to indicate why the defendant did not move for dismissal of the appeal immediately upon learning that a notice thereof had been filed. Instead he sat by and let the plaintiff expend the time, effort and money necessary to effect the appeal and even to prepare and file the brief on appeal. Not until it came time for him to present an answering brief did the defendant challenge the timeliness of the appeal. Under the particular circumstances of this case, and having in mind the desirability of deciding appeals on the merits and realizing that no prejudice will result to the defendant by our action, we hold that it would result in an injustice to the plaintiff to now dismiss his appeal, especially since his time for appeal from the final judgment entered by the trial court on October 19, 1960, has long expired. We shall, therefore, exercise the power granted us by Rule 52 and resolve this appeal upon its merits.[5]

1. Supreme Ct.R. 6.

2. Supreme Ct.R. 7(a).

3. See Collins v. Miller, 1920, 252 U.S. 364, 40 S.Ct. 347, 64 L.Ed. 616; Lewis v. E. I. du Pont de Nemours & Co., Inc., 5 Cir., 1950, 183 F.2d 29, 21 A.L.R. 2d 757; Gombos v. Ashe, 1958, 158 Cal. App.2d 517, 322 P.2d 933.

4. Rules of Civil Procedure 54(b), patterned for the most part after Rule 54(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., provides:
"When multiple claims for relief or multiple parties are involved in an action, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates less than all

of the claims or the rights and liabilities of less than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."
The subject, "Why the Power to Render Separate Judgments Was Necessary", is ably treated in 6 Moore, Federal Practice, para. 54.22 (2d ed. 1953).

5. Upon similar grounds, one of the district courts of appeal of California in the case of Larrus v. First Nat. Bank of San Mateo County, 1954, 122 Cal.App.2d 884, 266 P.2d 143 ruled that it would treat a notice of appeal filed prior to rendition of judgment and filing of findings of fact and conclusions of law as having been filed immediately after entry of judgment. Rule 2(c) of the California Rules on Appeal, as amended in 1951, provides that the appellate court may in its discretion, for good cause shown, treat such notice

■ The main question upon the merits is whether the trial court erred in holding that a common law marriage is not valid in Alaska. It is generally the law in this country that the right to possess, preserve and bury, or otherwise dispose of, a dead body belongs to the surviving spouse and, if none such, then to the next of kin in the order of their relation to the decedent; that a violation of that right is a tort; and that damages for mental suffering are recoverable for a wilful invasion of the rights relating to dead bodies.[6] Consequently, if the relationship entered into by the plaintiff and the decedent, Edith Edwards, in June, 1957, was a valid common law marriage, the plaintiff as the surviving spouse was entitled to prosecute his tort claim against the defendant.

In tracing the history of the Alaska marriage laws, we find that for a long time during Territorial status, we were governed by an Oregon statute, adopted for Alaska by Congress,[7] which later appeared as section 5 of the Carter and Charlton codes, respectively, and finally became codified as section 431 Compiled Laws of Alaska 1913, and provided simply that

"Marriage is a civil contract, which may be entered into by males of the age of twenty-one years and females of the age of eighteen years who are otherwise capable."

There are several additional sections of the Code relating to certain types of prohibited and voidable marriages (without any reference whatsoever to common law marriages),[8] and setting forth certain directory, as distinguished from mandatory, provisions for the solemnization of marriages.[9] It is apparent that those early enactments on marriage did not abrogate common law marriage in Alaska. It was not until 1917 that Alaskans through their own Territorial legislators spoke out on the subject and declared that

"No person shall be joined in marriage in this Territory until a license shall have been obtained for that purpose from a duly appointed and qualified United States Commissioner."[10]

■ We regard these words as mandatory and not merely directive; and, since they have never been changed or repealed and were in full force and effect in June of 1957, we must hold as invalid the marriage relationship sought to be effected by the plaintiff and the decedent without benefit of a marriage license.[11] The three Alas-

---

of appeal as filed immediately after entry of judgment.

6. Larson v. Chase, 1891, 47 Minn. 307, 50 N.W. 238, 14 L.R.A. 85; Steagall v. Doctors Hospital, 1948, 84 U.S.App.D.C. 214, 171 F.2d 352; Alderman v. Ford, 1937, 146 Kan. 698, 72 P.2d 981; Gadbury v. Bleitz, 1925, 133 Wash. 134, 233 P. 299, 44 A.L.R. 425.

7. See 23 Stat. 24. The Oregon statute, referred to in this opinion, was enacted on October 15, 1862 and appears as § 2852 of Hill's Annotated Laws of Oregon, 1887.
   On June 6, 1900, Congress passed "An Act making further provision for a civil government for Alaska, and for other purposes" (31 Stat. 321), and in section 5 of Title III thereof (31 Stat. 494) declared that
   "Marriage is a civil contract, which may be entered into by males of the age of twenty-one years and females of the age of eighteen years who are otherwise capable."

This was a part of the Congressional process in 1900 of adopting, section by section, considerable portions of the Oregon statutes as the laws of Alaska.

8. Sections 432 and 433, C.L.A.1913.

9. Sections 434–437, C.L.A.1913.

10. S.L.A.1917, ch. 56, § 1. This particular provision of the law has never been repealed and is presently contained in section 21–1–1 A.C.L.A.1949 and section 21–1–11 A.C.L.A.Cum.Supp.1957.

11. In Reed v. Harkrader, 9 Cir., 1920, 264 F. 834, 835, an Alaska case, the appellate court, with respect to the marriage solemnization formalities, called for by the Oregon statute (2 Hill's Ann.Laws Or.1892, § 2856) in force in Alaska and applicable to the marriage relationship in question in that case, invoked the rule that, where the statute merely prescribes formalities for marriage but does not make invalid a marriage not conforming thereto, it does not invalidate a common law marriage, and that such formal pro-

ka cases [12] cited by the plaintiff in support of his claim that common law marriages are valid in Alaska are not binding upon this court as they all involved situations in which the marriages had been contracted prior to 1917. We conclude, therefore, that the lower court was entirely correct in its decision that the plaintiff was not the husband of Edith Edwards, the deceased.

In his brief the plaintiff also raises the issue that, inasmuch as the trial court dismissed the tort count entirely, it erred in giving a gratuitous opinion that there was no basis for exemplary damages prayed for in the complaint. On this point we find no error.

Judgment affirmed.

visions may be construed as merely directory, not mandatory. The court observed specifically:

"* * * The Oregon statute does not declare that no marriage shall be valid unless solemnized in the prescribed manner * * *."

12. McDaniels v. McDaniels, D.C.D.Alaska 1914, 5 Alaska 107; Reed v. Harkrader, 9 Cir., 1920, 4 Alaska Fed. 893, 264 F. 834; Parks v. Parks, D.C.D.Alaska 1921, 6 Alaska 426.