Mary E. PATRICK, Appellant,

v.

Dr. Jack D. SEDWICK, Appellee.

No. 314.

Supreme Court of Alaska.

Aug. 14, 1963.

---

9. McIntyre v. State, 379 P.2d 615, 617 (Alaska 1963).

Robert A. Parrish, Fairbanks, for appellant.

Arthur D. Talbot, Anchorage, for appellee.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

AREND, Justice.

One of the questions here presented is whether the proceedings below culminated in a final judgment from which this appeal could be taken. If the appeal was in order then there are several other important issues which need to be decided.

This litigation grew out of a subtotal thyroidectomy performed upon the plaintiff, Mary Patrick, by the defendant, Dr. Sedwick. The plaintiff alleged in her complaint that because of negligence in the performance of the operation certain of her nerve structures were severed, causing portions of the vocal chords and organs of her throat to become paralyzed so that she is unable to speak and has lost two-thirds of her breathing capacity. She also alleged that her informed consent was not obtained for the performance of an operation productive of such unfavorable results. Finally, she alleged that the defendant had agreed to provide and advise regarding proper postoperative treatment. She later produced evidence and made argument below that the defendant had failed to fulfill this agreement.

In his answer the defendant admitted that he had performed the operation, alleged that he rendered proper postoperative treatment to the plaintiff, and denied all allegations of negligence. By way of affirmative defense he declared his competence, skill, and use of reasonable care and proper medical treatment in his ministrations to the plaintiff, according to the usual standards of his profession in the community.

The case was tried in October, 1961, before the court sitting without a jury. On February 1, 1962, the trial judge read into the record and filed in the case a memorandum opinion in which he set forth his findings (1) that the plaintiff suffered injury to a recurrent laryngeal nerve [1] in the course of the operation performed upon her by the defendant; (2) that there was no evidence of negligence on the part of the defendant in the performance of the operation; [2] and (3) that the defendant

1. The recurrent laryngeal nerve is one of the most important branches of the vagus or pneumogastric nerve. It passes into the vocal chords on each side of the larynx or windpipe and lies beneath the thyroid gland. One of its principal functions is to work the vocal chords. Maloy, Legal Anatomy and Surgery, 145, 403 (2d ed. 1955).

2. Regarding the absence of evidence of negligence in the performance of the thyroidectomy by the defendant, the trial judge stated in his memorandum opinion:
"Now, the fact that the injury occurred in the course of the operation is not, I believe, an occurrence from which a layman can draw an inference of negligence, and according to the expert medical testimony, such an injury occurs in a percentage of cases despite reasonable precautions. If I were informed that out of every 100 thyroidectomies there would result a certain percentage involving injury to the nerve, of which a certain number of these occurred in spite of the best precautions, then I might balance these factors and determine the probability of negligence. But I have before me no such information. I am told nothing more than that out of so many thyroidectomies a certain percentage will result in injury to the nerve despite precautions. I cannot say therefor, under these circumstances, that the defendant was probably negligent. The inference that the injury to the nerve occurred in spite of precautions is equally strong as the inference that the injury to the nerve occurred through negligence. Hence, I cannot make a finding that the probable

was liable to the plaintiff for negligence in the furnishing of postoperative treatment. The trial judge concluded by stating that the memorandum opinion should stand for findings of fact and conclusions of law on all issues of liability and ordered counsel to prepare and file briefs on the question of damages. It does not appear that such briefs were ever filed.

On February 9, 1962, both parties made motions to amend the findings as to liability. On May 10, 1962, the plaintiff moved to amend the court's findings or in the alternative for a new trial. At the close of the plaintiff's case in the trial below the defendant had moved for judgment dismissing the complaint with prejudice. This motion had never been acted upon by the trial court; so on May 28, 1962, the defendant moved for a ruling on the motion favorable to himself.

On June 1, 1962, all of the foregoing motions came on simultaneously for hearing below and were extensively argued by counsel. The court reserved its ruling on the motions until October 11, 1962, and at that time made and filed the following order:

> IT IS ORDERED that the motions for a new trial are denied on all issues of liability, but a new trial on the issues of damages is appropriate. Therefore, this matter shall be set down for further hearing on the damage issues only.

The issue as to damages was never heard because on November 10, 1962, the plaintiff gave notice of appeal "from the final judgment entered in this action on the 11th day of October, 1962," to use her own words. It is to be noted that the plaintiff has changed her position in her opening brief on appeal, and there informs us that "this is an appeal from a final judgment entered on February 1, 1962, denying Appellant, Plaintiff below, as to the issue of liability for negligence in the performance of the

thyroidectomy operation by the Defendant," adding that "on October 11, 1962, the Trial Court denied Appellant's Motion for New Trial on the issue of liability for the negligent performance of the thyroidectomy operation."

We hold that neither the memorandum opinion of February 1, 1962, nor the order of the following October 11 constitutes a final judgment from which an appeal may be taken under our rules.[3]

It is true, as urged by the plaintiff, that Civ.R. 54(a) defines a judgment as "a decree and any order from which an appeal lies," and that in In re Mountain View Public Utility Dist. No. 1[4] we held in effect that a memorandum opinion will be regarded as a judgment, though not formally a judgment or so labeled, where it clearly evidences the trial judge's intent to presently and finally dispose of the matter at issue. It is also true, as she reminds us, that under Civ.R. 58, when the court directs that all relief be denied, the clerk shall enter judgment forthwith upon receipt by him of the direction. On the basis of these legal principles the plaintiff then argues that she consistently sought damages below only for the negligent performance of the operation and states that, since "the Memorandum Opinion of February 1, 1962 (or the Order of October 11, 1962) denied all relief since it denied all relief for which plaintiff asked," it evidenced the trial judge's intent to presently and finally dispose of plaintiff's complaint for injuries received as a result of the operation and, therefore, it constituted a final judgment.

Plaintiff's claim that she had never sought damages in this case for any act of the defendant other than his alleged negligent performance of the thyroidectomy is not borne out by the record. As we have already stated herein, one of the allegations of the plaintiff's complaint was that the de-

---

cause of plaintiff's injury was defendant's negligence."

**3.** Supreme Ct.R. 6 provides in part: "An appeal may be taken to this court from a final judgment entered by the superior

court or a judge thereof in any action or proceeding, civil or criminal * * *."

**4.** 359 P.2d 951, 954 (Alaska 1961). This case is cited by the parties as Wood v. Gray.

fendant had agreed to provide her with proper postoperative care and to advise her regarding the same. The defendant answered this allegation by stating in his answer that after the operation he rendered further proper care and treatment to the plaintiff. At the trial the plaintiff introduced evidence tending to establish a failure on the part of the defendant to provide proper postoperative care, which the defendant sought to refute by cross examination of the plaintiff and evidence of his own. The issue was also covered by counsel for the plaintiff in his arguments to the court.

Undoubtedly it was this state of the record which caused the trial judge to comment in the memorandum opinion that "it became apparent as the plaintiff's case developed in trial that she chose to rest her case on several different grounds," one of these being her claim that the defendant was negligent in failing to provide proper postoperative care. On that issue of liability the court found for the plaintiff and directed a further hearing on the damages issue only. Since the damages issue has not been adjudicated, neither the memorandum opinion nor the order of October 11, 1962, constituted a final judgment or order and, therefore, the appeal was premature.[5]

Finally, on the question under consideration, the plaintiff urges that, even if this appeal is premature, the court should treat it as a petition for review and thus prevent the hardship and injustice that will otherwise befall her before the case can be brought up again on appeal. Her basis for this proposition is that her injury occurred in 1957 and that it has taken her all this time to get her case to the point where it is now. Her counsel envisages the lapse of another two years before he will be able to assemble the law and the evidence needed to properly present and try the issue of damages, and thereafter it may require an additional year, he thinks, to perfect an appeal from the decision on damages from postoperative treatment, if that decision should prove unsatisfactory to either party.

In support of her claim that we should treat this appeal as a petition for review in order to prevent hardship and injustice, the plaintiff cites us to our decisions in Jefferson v. Spenard Builders' Supply, Inc.,[6] Stokes v. Van Seventer,[7] and In re Mountain View Public Utility Dist. No. 1.[8] We do not consider any of them controlling under the facts and circumstances of this case.

In the Jefferson case a judgment had been entered against Jefferson as the principal defendant, foreclosing a materialman's lien against his property but leaving undisposed of the claims of several other defendants against the same property. We felt that the appeal should be treated as a petition for review, since it was doubtful that any determination of the issues that might exist as to the other defendants would necessitate a revision of the findings and judgment as to Jefferson and since it appeared from the record that there might be considerable delay in bringing the case to final determination (because the plaintiff had granted three of the other defendants an indefinite continuance within which to answer). In the instant case the future litigation will very definitely concern the plaintiff, and the element of delay which obviously existed in the Jefferson case is not present here.

In Stokes v. Van Seventer[9] the trial court in an ejectment action directed by interlocutory order that the defendants pay into the court the reasonable monthly rental value of the property in litigation, pen-

---

5. See Leonidakis v. International Telecoin Corp., 208 F.2d 934, 936 (2d Cir. 1953); 6 Moore, Federal Practice para. 54.13, at 125 (2d ed. 1953). The provision of Fed.R.Civ.P. 56(c) mentioned in the Leonidakis case is identical with a similar provision in our Civ.R. 56(c).

6. 366 P.2d 714 (Alaska 1961).

7. 355 P.2d 594 (Alaska 1960).

8. 359 P.2d 951 (Alaska 1961).

9. Supra note 7.

dente lite, a procedure for which we could find no case or statutory authority. We held that the defendants were entitled to an immediate review under Supreme Ct.R. 24,[10] even though they had come up on appeal. Our reasons for granting such interlocutory review were two: First, the policy behind the rule requiring appeals to be taken only from final judgments was outweighed by the claim in that case that it would work an injustice and result in hardship to leave the defendants under the mandate of an indefensible interlocutory order to pay rent until the entry of a final judgment. Secondly, since the trial court had no legal authority to impose the rent order, it had so far departed from the accepted and usual course of judicial proceedings as to call for our power of supervision and review.

The Mountain View case [11] did nothing more than to state, obiter dicta, the rule that to prevent hardship and injustice this court on its own motion may treat an appeal as a petition for review and decide the questions presented to the same extent and with the same effect as on an appeal. Since we regarded the order appealed from in that case as a final decision, we did not need to invoke the rule or consider its applicability to the facts presented.

A case which, we agree with the defendant, bears upon the question presented here is that of City of Fairbanks v. Schaible.[12] There we denied a properly denominated petition for review, even though we conceded that to have granted the petition

would have shortened the litigation for the petitioner if we had adopted his contentions. Nevertheless, we ruled:

"To allow interlocutory review without restriction would be unwise, because in many cases this would add to the delay of litigation and would result in decisions on points that might otherwise be disposed of during the course of the litigation without substantial prejudice to anyone. * * * [13]

\* \* \* \* \* \*

"The court is of the belief that ultimate justice is more likely to be attained if the issues are required to be processed in the normal manner. A full adversary treatment of all issues of fact and law by the trial court, before resorting to the appellate court, has been found to be a sound policy. The fact that the ultimate decision in the case is of great importance to all Alaska cities is all the more reason to require that the issues be handled in the normal manner in the absence of reasons that compel a different approach. Deviation from the normal procedure is only warranted in the unusual cases mentioned in the rules and to prevent injustice." [14]

In her reply brief plaintiff asks us to apply in this case the rule we laid down in Edwards v. Franke [15] that unless the appellee promptly moves to dismiss an appeal for prematurity it should be heard on its merits. There is a sound reason for

10. Supreme Ct.R. 24 provides as follows:
"A review shall not be a matter of right, but will be granted only: (1) where the order or decision sought to be reviewed is of such substance and importance as to justify deviation from the normal appellate procedure by way of appeal and to require the immediate attention of this court; (2) where the sound policy behind the general rule of requiring appeals to be taken only from final judgments is outweighed by the claim of the individual case that justice demands a present and immediate review of a particular non-appealable order or decision; or (3) where the superior court

has so far departed from the accepted and usual course of judicial proceedings, or so far sanctioned such a departure by an inferior court or administrative tribunal, as to call for this court's power of supervision and review."

11. Supra note 8, 359 P.2d at 954.

12. 352 P.2d 129 (Alaska 1960).

13. City of Fairbanks v. Schaible, 352 P.2d, at 130, supra note 12.

14. City of Fairbanks v. Schaible, 352 P.2d, at 131, supra note 12.

15. 364 P.2d 60, 62 (Alaska 1961).

not applying that rule to the subject appeal. In Edwards v. Franke we were able to dispose of the appeal upon the merits, something we are not able to accomplish in the case before us now as the issue of damages remains to be adjudicated.

We have not been convinced by the plaintiff that in her case the policy behind the rule requiring appeals to be taken only from final judgments is outweighed by her claim that justice demands a present and immediate review of a non-appealable order.

Appeal dismissed because of prematurity and the case remanded to the superior court for further proceedings.