CORONET HOMES, INC., APPELLANT, *v.* J. C. McKENZIE, HOWARD F. McKISSICK, SR., JACK B. CUNNINGHAM, RICHARD STREETER, AND LEO F. SAUER, THE DULY ELECTED BOARD OF COUNTY COMMISSIONERS, COUNTY OF WASHOE, STATE OF NEVADA, RESPONDENTS.

No. 5437

March 29, 1968                    439 P.2d 219

*Lohse and Lohse* of Reno, for Appellant.

*William J. Raggio,* District Attorney, and *Perry P. Burnett,* Deputy District Attorney, Washoe County, for Respondents.

# OPINION

By the Court, MOWBRAY, J.:

This is an appeal from a judgment of the Second Judicial District Court, affirming a ruling of the Washoe County Board of County Commissioners in denying appellant's application for a Special Use Permit to vary the lot size requirements of the Density Zoning Provisions of Washoe County Land Use Ordinance, Article 5(E), Washoe County Ordinance No. 57.

The principal issues presented for our consideration are:

(1) Is Article 33(A) of Washoe County Ordinance No. 57[1] permissible under NRS 278.020;[2] and

(2) Was the action of the Washoe County Board of County Commissioners in denying appellant's application for the Special Use Permit arbitrary and capricious.

Appellant Coronet Homes, Inc. applied to the Regional Planning Commission of Reno, Sparks and Washoe County for a Special Use Permit, Application No. SP–34–66W, to permit variation in lot size and yard requirements under the Density Zoning provisions of the Washoe County Land Use Ordinance, Article 5(E), Washoe County Ordinance No. 57. The property involved covered approximately 163 acres and is situated west of U.S. Highway 395 and north of Huffaker Lane in Washoe County. On June 9, 1966, applicant was advised that, at a regular meeting of the Regional Planning Commission, held on June 7, 1966, its request for a Special Use Permit for density zoning had been considered by the commission and denied, together with a supporting tentative plat of a proposed golf course within the subdivision.

On June 13, 1966, appellant gave notice of appeal to the Board of County Commissioners of Washoe County. The appeal was heard on June 27, 1966. Numerous persons appeared and spoke for and against appellant's proposal and, by unanimous vote, one commissioner abstaining, the appeal was denied.

---

[1]Article 33(a), Special Use Permits,

"A.   Where the establishment of uses or functions requires issuance of a permit, as provided herein, the following shall apply:

"1.   Procedure:   Any person seeking issuance of a Permit shall file a request with the Administrator and shall appear before the Board of Adjustment or the Planning Commission presenting evidence of all the following:

"(a) That the use is necessary to the public health, convenience, safety and welfare and to the promotion of the general good of the community, and

"(b) That the use of the property for such purposes will not result in material damage or prejudice to other property in the vicinity, and

"(c) That all owners of real property within 300 feet of the exterior limits of the property involved, as shown by the latest Assessor's ownership maps, have been notified of the intended use of such property and proposed construction or alteration of any building."

[2]NRS 278.020. Governing bodies empowered to regulate land improvement and location of structures for general welfare. For the purpose of promoting health, safety, morals, or the general welfare of the community, the governing bodies of cities and counties are authorized and empowered to regulate and restrict the improvement of land and to control the location and soundness of structures.

Appellant filed on August 12, 1966, a complaint in the Second Judicial District Court, seeking approval of its tentative subdivision plat and application for a special use permit. Issues were joined and, by stipulation of the parties, the transcript and minutes of the hearing before the Board of County Commissioners, with all documents and exhibits presented to the board, were submitted to the district court for decision.

The district court on March 7, 1967, rendered its decision against appellant and, on July 17, 1967, findings of fact, conclusions of law and judgment were entered.

Appellant's challenge of Washoe County Ordinance No. 57 centers on the validity of Article 33 of the ordinance and, in particular, that part which provides that an applicant in seeking a special use permit must present evidence "that the use is necessary to the public health, convenience, safety and welfare and for the promotion of the general good of the community." The Board of County Commissioners interpreted this provision, and properly so, as placing the burden of proof on the appellant. Appellant urges that such a burden, as stated in Article 33(A) of the ordinance is not permissible under NRS 278.020 and, if so, is unconstitutional for it places an unreasonable burden on the applicant for the special use permit. We do not agree. On the contrary, NRS 278.020 is clear and unambiguous in empowering the counties of the state with the authority to regulate and restrict the improvement of land and to control the location and soundness of structures built on the land. The Density Zoning Provision of the Washoe County Land Use Ordinance, Washoe County Ordinance No. 57,[3] is

---

[3]"Summary:  An Ordinance amending the Land Use Plan, a part of the Master Plan of Washoe County.

"Bill No. 76

"Ordinance No. 57 (as amended)

"AN ORDINANCE AMENDING, REPEALING IN PART AND RE-ESTABLISHING A LAND USE PLAN WITHIN THE UNINCORPORATED AREA OF WASHOE COUNTY, REGULATING AND RESTRICTING THE USE OF LAND; THE LOCATION, USE, BULK, HEIGHT, AND NUMBER OF STORIES OF STRUCTURES; THE DENSITY OF POPULATION; THE PROPORTION OF LAND TO BE COVERED BY STRUCTURES; ESTABLISHING SETBACK LINES; PROVIDING FOR ADJUSTMENT, ENFORCEMENT AND AMENDMENT OF SAID LAND USE PLAN AND ITS ORDINANCES; PRESCRIBING PENALTIES FOR THE VIOLATION THEREOF AND OTHER MATTERS RELATING THERETO.

"The Board of County Commissioners of Washoe County do ordain:

"Article 1 Purpose

"A.  To promote the public health, safety, morals, convenience,

precisely the sort of ordinance authorized by the Legislature under NRS 278.020.

In essence an application for a use permit or a variance implies a challenge to the legality of the zoning ordinance as it applies to a specific piece of property. Forest Hills Borough Appeal, 187 A.2d 166 (Pa. 1963); Colligan Zoning Case, 162 A.2d 652 (Pa. 1960); Garber Zoning Case, 122 A.2d 682 (Pa. 1956); Baronoff v. Zoning Bd. of Adjustment, 122 A.2d 65 (Pa. 1956). In other words, a challenge to the validity of a zoning ordinance is a natural and foreseeable outgrowth of a request for a special use permit or variance.

Zoning is a tool in the hands of governmental bodies which enables them to more effectively meet the demands of evolving and growing communities. It must not, and cannot, be used by those officials as an instrument by which they may shirk their responsibilities. Zoning is a means by which a government body and its citizens can plan and build for the future—it may not, however, be used as a means to deny the future.

The days are fast disappearing when the judiciary can look at a zoning ordinance and, with nearly as much confidence as

---

general welfare; to lessen traffic congestion in the streets; to provide light and air for all buildings; to avoid undesirable concentrations of population; to prevent overcrowding of land and to facilitate adequate provision of transportation, water, sewage, schools, parks and other public requirements and to provide the economic and social advantages gained from a comprehensively planned use of land resources, there is hereby established a Land Use Plan for the County of Washoe.

\* \* \* \* \*

"E. Density Zoning:
"1. Subject to issuance of a Special Use Permit following review by the Planning Commission and the filing of a tentative and final subdivision plat, variations in lot size and yard requirements may be made in A–1, A–2, A–3, A–4, E–1, E–2, R–1b and R–1a zones in subdivisions tentatively approved by Regional Planning Commission so long as the total number of dwelling units in the proposed development does not exceed the number permitted under existing zoning.
"2. The person seeking to use the Density Zoning provisions of this Ordinance shall first submit a tentative subdivision plat showing variations in lot size and yard requirements. After tentative plat approval, such person shall apply for a Special Use Permit pursuant to the provisions of this Ordinance based on the tentative plat. In addition to other conditions, the Special Use Permit shall be conditioned upon approval of the final subdivision plat. (amended by Bill No. 136–12/65)"

a professional zoning expert, decide upon the merits of a zoning plan and its contribution to the health, safety, morals or general welfare of the community. Courts are becoming increasingly aware that they are neither super boards of adjustment nor planning commissions of last resort. Di Santo v. Zoning Bd. of Adjustment, 189 A.2d 135 (Pa. 1963); Joseph B. Simon & Co. v. Zoning Bd. of Adjustment, 168 A.2d 317 (Pa. 1961). Rather, the court acts as a judicial overseer, drawing the limits beyond which local regulation may not go, but loathing to interfere, within those limits, with the discretion of local governing bodies. Tidewater Oil Co. v. Poore, 149 A.2d 636 (Pa. 1959).

The zoning power is one of the tools of government which, in order to be effective, must not be subjected to judicial interference unless clearly necessary. For this reason, a presumption of validity attaches to a zoning ordinance which imposes the burden to prove its invalidity upon the one who challenges it. Cleaver v. Bd. of Adjustment, 200 A.2d 408 (Pa. 1964); Bilbar Constr. Co. v. Easttown Twp. Bd. of Adjustment, 141 A.2d 851 (Pa. 1958).

The oft repeated, although ill defined, limitation upon the exercise of the zoning power, requires that zoning ordinances be enacted for the health, safety, morals or general welfare of the community. Cleaver v. Bd. of Adjustment, supra. Such ordinances must bear a substantial relationship to those police power purposes. Glorioso Appeal, 196 A.2d 668 (Pa. 1964); Sylvester v. Pittsburgh Zoning Bd. of Adjustment, 157 A.2d 174 (Pa. 1959). And if the ordinance does, in its application to specific properties, impose an "unnecessary hardship," it cannot be termed a reasonable or constitutional exercise of the police power. To preserve the validity of the zoning ordinance in its application to the community in general, the use permit and variance provisions of the ordinance function as an "escape valve," so that when regulations which apply to all are unnecessarily burdensome to a few because of certain unique circumstances, a means of relief from the mandate is provided. Peirce v. Zoning Bd. of Adjustment, 189 A.2d 138 (Pa. 1963).

There is no doubt that zoning for density is a legitimate exercise of the police power. Bilbar Constr. Co. v. Easttown Twp. Bd. of Adjustment, supra; Volpe Appeal, 121 A.2d 97

(Pa. 1956). The cluster zoning of approximately 148 homes about a 103-acre golf course, as shown by the applicant's tentative subdivision plat, contrasts sharply with the character of the residential homes built on 1 and 2-acre lots surrounding applicant's property. The clustering of the smaller lots about the proposed golf course elicited strong objections of those living in the neighboring area, as reported in the transcript of the hearing before the Board of County Commissioners. And understandably so. Zoning laws are passed in the interest of the public welfare and the benefit accrues not only to the municipality but also to the neighboring land owners. Rosenberg v. Mehl, 174 N.E. 152 (Ohio 1930); Pritz v. Messer, 149 N.E. 30 (Ohio 1925). Too often a property owner will, after careful consideration, select a site and build in conformity with, and reliance upon, the zoning ordinance then in effect, only to face time and again attempts by others to change the zoning plan and character of the neighborhood through the issuance of use permits and the granting of variances to the zoning ordinance.

Aside from the individual property owner's interest in relying on the zoning regulation of the area, there is a legitimate public interest involved in density zoning which affects the "health, safety, morals and general welfare of the community." The relative advantages of a 1-acre lot over a one-half-acre lot are easy to comprehend. Similarly, a 2-acre lot has advantages over a 1-acre lot. The greater the amount of land, the more room for children, the less congestion and traffic, the easier to handle water supply and sewage, and the fewer municipal services which must be provided. At some point along the spectrum, however, the size of lots ceases to be a concern requiring public regulation and becomes simply a matter of private preference. The point at which legitimate public interest ceases is not a constant one, but one which varies with the land involved and the circumstances in each case.

We hold that the Density Zoning Provision of Washoe County Land Use Ordinance, Washoe County Ordinance No. 57, is constitutional and that Article 5(E) of the ordinance placing upon the applicant for a special use permit the duty of establishing that the special use is necessary to the public health, convenience, safety and welfare and to the promotion of the general welfare of the community is not unreasonable and is permissible under NRS 278.020.

We turn to appellant's second argument that the action of the Board of County Commissioners in denying appellant's

application for a special use permit was arbitrary and capricious. We find this argument to be without merit. A full hearing was conducted by the Board of County Commissioners. There were many and strong objections to appellant's application for the special use permit. Appellant failed to make any showing that "the use is necessary to the public health, convenience, safety and welfare and to the promotion of the general good of the community," as required in subparagraph (A) of Article 33 of the ordinance. It would appear that the principal basis for the application was to gain permission to construct a subdivision for the sale of houses on smaller lots than permitted by the present zoning ordinance. This alone is insufficient for, as the court said in Brandon v. Board of Com'rs of Montclair, 11 A.2d 304, 312 (N.J. 1940): "It is not per se a sufficient reason for a variation that the nonconforming use is more profitable to the landowner. People ex rel. Fordham Manor Reformed Church v. Walsh, supra; Grady v. Katz, supra; Levy v. Board of Standards & Appeals, supra. The converse of this would emasculate the principle of zoning, for invidious distinctions are inadmissible."

The Board of County Commissioners in denying appellant's application for a special use permit did not act arbitrarily nor capriciously; and the judgment of the district court must be sustained.

Affirmed.

THOMPSON, C. J., COLLINS, ZENOFF, and BATJER, JJ., concur.