WESTERN INTERNATIONAL HOTELS, a foreign corporation, Plaintiff,

v.

TAHOE REGIONAL PLANNING AGENCY et al., Defendants.

George R. SMITH and G. R. S., Inc., Plaintiffs,

v.

TAHOE REGIONAL PLANNING AGENCY et al., Defendants.

Nathan S. JACOBSON, Plaintiff,

v.

TAHOE REGIONAL PLANNING AGENCY et al., Defendants.

BOISE CASCADE HOME & LAND CORPORATION, Plaintiff,

v.

TAHOE REGIONAL PLANNING AGENCY et al., Defendants.

EDGEKING VENTURE, a partnership, et al., Plaintiffs,

v.

TAHOE REGIONAL PLANNING AGENCY et al., Defendants.

Civ. Nos. R–2950, R–2956, R–2947, R–2957, and R–2961 BRT.

United States District Court, D. Nevada.

Jan. 10, 1975.

Edward H. Tricker, Vargas, Bartlett & Dixon, Reno, Nev., for plaintiff in Civ. No. R–2950 BRT.

Robert List, Atty. Gen. for Nev., Carson City, Nev., for defendant State of Nevada.

Petersen & Petersen, Reno, Nev., for plaintiffs in Civ. No. R–2956 BRT.

Frank R. Petersen, Reno, Nev., Thomas R. Sheridan, Los Angeles, Cal., for plaintiff in Civ. No. R–2947 BRT.

Richard R. Hanna, South Lake Tahoe, Cal., for defendant TRPA.

Donald L. Carano, McDonald, Carano, Wilson & Bergin, Reno, Nev., Charles A. Legge, Paul J. Sanner, Bronson, Bronson & McKinnon, San Francisco, Cal., for plaintiff in Civ. No. R–2957 BRT.

Vargas, Bartlett & Dixon, Reno, Nev., for plaintiff in Civ. No. R–2961 BRT.

### ORDER

BRUCE R. THOMPSON, District Judge.

These cases have been considered together with respect to the motions to dismiss filed by defendants. Plaintiffs are owners of real property subject to the jurisdiction of the Tahoe Regional Planning Agency (hereinafter "TRPA").

TRPA is the product of the Tahoe Regional Planning Compact approved by Congress [1] and ratified by Nevada [2] and California [3]. Pursuant to the authority thereby established, TRPA has enacted and put into operation the Land Use Ordinance (hereinafter "LUO") comprehensively regulating the development and use of the areas within the jurisdiction of TRPA, including plaintiffs' properties. Plaintiffs complain that such ordinance unconstitutionally deprives them of their property. The motions to dismiss challenge the Court's jurisdiction over these complaints for plaintiffs' alleged failure to exhaust administrative remedies, for failure to state claims upon which relief can be granted, and for failure to state claims against the particular defendants.

*Exhaustion of Administrative Remedies.*

The motions to dismiss challenge the Court's jurisdiction over these actions for plaintiffs' alleged failure to exhaust administrative remedies. "The doctrine provides 'that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.' "[4]

The Compact and LUO each provide administrative procedures for alterations in the restrictions of use applicable to particular land sites. An aggrieved owner may seek an *amendment to the Regional Plan* in proceedings before the Planning Commission and TRPA. See Art. V, sec. (a) of the Tahoe Regional Planning Compact. A land owner may also seek an *alteration in "land coverage"* by application to the permit-issuing authority, subject to the review of TRPA. See LUO §§ 5.50, 8.25 and 8.-28. Or, the owner may seek a *variance in the "use regulation"* by application to

---

1. P.L. 91–148 (Dec. 18, 1969), 83 Stat. 360.

2. N.R.S. §§ 277.190 to 277.220.

3. West's Ann.Gov.Code § 66801.

4. McKart v. United States, 395 U.S. 185, 193, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194 (1969), citing Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50–51, 58 S.Ct. 459, 82 L.Ed. 638 (1938).

the permit-issuing authority. See LUO § 8.34.

Plaintiff Western International Hotels (hereinafter "Western") alleges pursuit of administrative remedies in that it sought an amendment to the general plan. Western's efforts resulted in TRPA rejection of the amendment without hearing. Counsel for TRPA acknowledged during argument on these motions that Western's efforts constituted exhaustion of remedies.

Plaintiffs Boise Cascade Home & Land Corporation (hereinafter "Boise Cascade"), Smith and Jacobson allege no pursuit of administrative remedies. They allege instead that the futility and inadequacy of the available procedures excuses them from exhausting those remedies. Plaintiffs support their position by arguing that the statements and policies of TRPA demonstrate that the relief sought by plaintiffs will not ·be granted by TRPA even if the procedures are invoked; that the expense involved in seeking relief before TRPA is prohibitive; and that the remedies available do not reach the fundamental question of the constitutionality of LUO.

■ The test for assessing the sufficiency of allegations of exhaustion of administrative remedies on a motion to dismiss (Rule 12(b)(1), Federal Rules of Civil Procedure) is whether "plaintiff has alleged sufficient facts with sufficient particularity to raise some question in [the] court's mind concerning the futility and/or inadequacy of resorting to the * * * remedy provided by State law."[5] If such a question is raised, it cannot be said to be a legal certainty, as it must on a motion to dismiss, that there is an efficacious adequate remedy which plaintiff must exhaust.

■ If an administrative body has a definite policy or has made definite statements opposed to plaintiff's position, it is not required that the plaintiff proceed before the administrative. body prior to seeking judicial review.[6] Plaintiffs refer to TRPA statements regarding the fragility of the Tahoe environment as evidence of TRPA policy to deny their applications for expanded use of the properties here in question. The stated "General Purposes" underlying the use districts of LUO (as set forth in § 7.11) are the protection of the "ecologically fragile areas and the quality of the lakes of the Tahoe Region;" the maintenance of the "natural scenic quality of the * * * Region;" and the limitation of the area population to "maintain an equilibrium between the Region's natural endowment and its manmade environment." Plaintiffs argue that TRPA will not, in the light of these adverse policies, authorize the return of their properties to the pre-LUO use classifications and that resort to TRPA is, therefore, futile.

Plaintiffs' properties are primarily in the most restrictive use classifications. Smith has eight acres in general forest; Jacobson has ten acres in general forest and recreation; and Boise Cascade has 3,300 acres in general forest as well as some acreage in recreation and in conservation.

■ Counsel for TRPA conceded at the hearing on these motions that a reclassification of Boise's entire 3,300 acres would not be considered, although Boise might obtain changes for portions of the tract. Boise does not seek authorization to develop portions of its property. It seeks authority to develop the entire tract. If reclassification will not be considered for the entire tract, it would be pointless to refer Boise to the administrative procedures.

■ The experience of Western Hotels is instructive as to the futility of

---

5. Ricciotti v. Warwick School Committee, 319 F.Supp. 1006, 1011–1012 (D.R.I.1970). *Ricciotti* involved extensive discussion of exhaustion in the context of 1983 civil rights actions, but the court reached the above conclusion on reasoning expressly independent

of the special considerations inherent in 1983 actions.

6. Nader v. Ray, 363 F.Supp. 946, 954 (D.C. 1973).

the remedies for the smaller parcel holders Smith and Jacobson. Western was refused a plan amendment for its 45 acres without hearing. The policy reasons underlying the exhaustion requirement are deference to the expertise of the zoning boards and enhancement of the judicial proceedings by the assistance of the administrative fact-finding function. Brawner Building, Inc. v. Shehyn, 143 U.S.App.D.C. 125, 442 F.2d 847 (1970). See also: Coronet Homes, Inc. v. McKenzie, 84 Nev. 250, 255–256, 439 P.2d 219 (1968). Summary treatment of proposed amendments such as that accorded Western by TRPA does not further either of these purposes.

Plaintiffs also challenge the adequacy of TRPA procedures in the light of this Court's holding in Brown v. Tahoe Regional Planning Agency, D.C., 385 F.Supp. 1128. We there excused exhaustion of remedies because the challenge to the constitutionality of the Land Use Ordinance as a whole placed the issues of the suit outside the scope of TRPA's administrative powers. Remedies are clearly inadequate in such a case. NLRB v. Marine Workers, 391 U.S. 418, 426, n. 8, 88 S.Ct. 1717, 20 L.Ed.2d 706 (1968).

For the purposes of the motions to dismiss, we must accept as established the well-pleaded facts of the complaints (Collins v. Hardyman, 341 U.S. 651, 652, 71 S.Ct. 937, 95 L.Ed. 1253 (1951)), and we must deny the motions unless it can be said to a legal certainty that plaintiffs can prove no set of facts in support of their claims. *Ricciotti, supra,* and Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In the light of the comments by counsel for TRPA, the express declarations of purpose of the Land Use Ordinance, the experience of Western Hotels, and the discretion vested in a court of equity to relax the exhaustion requirement where the facts of the case so dictate (Natural Gas Co. v. Slattery, 302 U.S. 300, 311, 58 S.Ct. 199, 82 L.Ed. 276 (1937)), we cannot say to a legal certainty that plaintiffs cannot prove that the administra-

tive remedies of the Ordinance are futile.

### Failure to State a Claim.

The motions to dismiss attack the complaints for their purported failure to state a claim upon which relief can be granted. Rule 12(b)(6), Federal Rules of Civil Procedure. The complaints allege that the regulation of plaintiffs' lands embodied in the Land Use Ordinance is so restrictive as to constitute a "taking" of those properties. The Ordinance is thus said to violate the constitutional guarantees that property will not be taken without compensation (Fifth Amendment) and that it will not be taken without due process of law (Fourteenth Amendment). Defendants justify the regulation by reliance on the police power doctrine.

The police power has been broadly defined as the "time-tested conceptional limit of public encroachment upon private interests" (Goldblatt v. Hempstead, 369 U.S. 590, 594, 82 S.Ct. 987, 990, 8 L.Ed.2d 130 (1962)); and "the power to regulate human activity in order to promote public health, safety, welfare and morals" (Van Alstyne, "Taking or Damaging by Police Power: The Search for Inverse Condemnation Criteria," 44 So. Cal.L.Rev. 1 (1971)). Justice Holmes recognized that limitation of private rights may be justified where the police power is properly invoked: "Government hardly could go on if to some extent values incident to property could not be diminished without paying for every such change in the general law. As long recognized some values are enjoyed under an implied limitation and must yield to the police power." Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 413, 43 S.Ct. 158, 159, 67 L.Ed. 322 (1922).

Justice Holmes also recognized that police power regulation had its limits: "[W]hile property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking." Id., at 415, 43 S.Ct. at 160. The "classic statement" (*Goldblatt,* op. cit.) of the

constitutional limits on police power antedates even Holmes:

"To justify the State in * * * interposing its authority in behalf of the public, it must appear, first, that the interests of the public * * * require such interference; and, second, that the means are reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon individuals." Lawton v. Steele, 152 U.S. 133, 137, 14 S.Ct. 499, 501, 38 L.Ed. 385 (1894).

■ Although the police power may justify limitation of private rights, it does not justify all limitations. Both the purpose for which the power is invoked and the means by which the end is pursued must be constitutionally sound. Neither the ends nor the means may be unreasonable or arbitrary and neither must "take" private property unless the owner is compensated therefor.

■■ When regulations are attacked as violative of the Fifth and Fourteenth Amendments to the Constitution, we must look to the decisions of the United States Supreme Court for guidance. Pennsylvania Coal Co. v. Mahon, *supra,* is the landmark case. Subsequent decisions have not modified it. Euclid v. Ambler Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926); Nectow v. Cambridge, 277 U.S. 183, 48 S.Ct. 447, 72 L. Ed. 842 (1928); Seattle Trust Co. v. Roberge, 278 U.S. 116, 49 S.Ct. 50, 73 L.Ed. 210 (1928); Berman v. Parker, 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27 (1954); Goldblatt v. Hempstead, 369 U. S. 590, 82 S.Ct. 987, 8 L.Ed.2d 130 (1962); Village of Belle Terre v. Boraas, 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed. 2d 797 (1974). *Goldblatt, supra,* makes it clear that a full development of the facts is essential and that the burden of proof with respect to unreasonableness is on the plaintiffs.

Professor Van Alstyne provides the most recent and thorough analysis of the criteria for stating the "taking" cause of action. "The Inverse Condemnation Criteria," *supra.* While we do not necessarily consider Professor Van Alstyne's criteria to be an exhaustive list, they do appear to represent the fundamental elements of the "taking" claim. These elements, briefly summarized, are broken into two areas, the first assessing the validity of the regulation in terms of the end sought, and the second assessing the validity of the means selected to achieve that end.

There are three principal bases of attack for a challenge to the validity of the purposes of a regulation. Does the nature of the purpose relate to the traditional police power concepts of health, safety, welfare and morals, or is it a questionable "avant garde" purpose like preserving aesthetic qualities? *Id.,* pages 14–19. Who are the beneficiaries of the regulation; is it aimed at benefits for the public in general or for a limited private interest? *Id.,* pages 19–23. Is the regulation intended to benefit the government itself; does the regulation relieve the government of an obligation such as preservation of an historic site by police power regulation in an attempt to avoid paying just compensation in a condemnation proceeding? *Id.,* pages 23–26.

The present complaints hint at allegation of these elements of an attack on the ends of the Land Use Ordinance. Although it does not state that such a purpose is impermissible, plaintiff Boise Cascade does allege that the purpose of the Ordinance is to benefit the public by preserving area aesthetics. The allegations of the other complaints that the purpose of the Ordinance is to dedicate the property to the use and benefit of the public might be broadly construed to challenge the Ordinance as an attempt to enrich the government by establishing a park or public asset without paying just compensation. The complaints offer these conclusory allegations without any accompanying allegations of supportive facts.

■ The means employed by a police power regulation may be challenged by reference to at least two factors. The

means must be suitable to accomplish the desired end. *Id.*, pp. 29–37. The suitability of the means may be assessed in terms of whether adherence to the regulation is indispensable to fulfillment of the regulation objectives, *Id.*, p. 33, and whether the extent of depreciation in value of the property as a result of the regulation is exhorbitant. *Id.*, p. 34.

The validity of the means may also be assessed with respect to the loss to the property owner occasioned by the regulation. *Id.*, pp. 37–48. This loss is evaluated in relation to the loss of use of the property (*Id.*, p. 42) and the loss of value. *Id.*, p. 37. The loss of value here referred to must be distinguished from the similar element of the suitability factor. In the suitability test, diminution in value of the property subject to the regulation is compared to the value without the regulation—the lower the loss the more suitable the means. When diminution in value is assessed relative to the private loss factor, however, the concern is with the balancing of public benefits secured by the regulation against private detriment suffered thereby.

The complaints of plaintiffs Jacobson and Western Hotels contain language similar to that of plaintiff Smith's complaint alleging that "such extensive and prohibitive restrictions on use [as those imposed by the Land Use Ordinance] were not warranted to serve the public health, safety and welfare." Plaintiff Boise Cascade makes no such allegation and none of the plaintiffs challenge the feasibility of using their properties for the uses permitted by the Ordinance. Each of the complaints do, however, include an allegation similar to that of plaintiff Jacobson who charges that the LSO so restricts his property as to render it "unavailable for any personal, private beneficial use." Here, as before, plaintiffs have refrained from offering factual allegations in support of their claims.

The dominant allegation joined in by each of the plaintiffs is the allegation of diminution in value There is no at-

tempt to distinguish between loss of value relevant to the concern for the suitability of the means and the loss in value relevant to the private loss factor, but it would seem safe to assume that plaintiffs would offer proof of loss of value for both purposes. Each of the complaints allege "excessive economic loss" or "substantially destroyed" property value. Only Western Hotels offers any factual support for this statement. The complaint of Western Hotels alleges that the assessed property value dropped from a pre-Ordinance value of $21,000 to a post-Ordinance value of $5,810.

■ In assessing the validity of a complaint on a motion to dismiss, the Court must accept as established the well-pleaded facts of the complaint. Collins v. Hardyman, 341 U.S. 651, 652, 71 S.Ct. 937, 95 L.Ed. 1253 (1951). In general, under the notice theory of pleading incorporated in the Federal Rules of Civil Procedure, "it is immaterial whether a pleading states conclusions or facts." Sachs v. Levy, 216 F. Supp. 44, 47 (E.D.Pa.1963). And it is generally true that a complaint "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

Western Hotels' allegation of the change in assessed value of its property is the only non-conclusory allegation in the five complaints. It would appear, nevertheless, that these essentially conclusory complaints might withstand a motion to dismiss in the usual case.

■ We are not, however, dealing with the usual case. We are dealing with the very special case of challenges to the constitutionality of an administrative enactment. The acts of an administrative body are entitled to the same presumption of constitutionality accorded legislative acts:

"Every exertion of the police power, either by the Legislature or by an ad-

ministrative body, is an exercise of delegated power. Where it is by statute, the Legislature has acted under power delegated to it through the Constitution. Where the regulation is by an order of an administrative body, that body acts under a delegation from the Legislature. * * * But where the regulation is within the scope of authority legally delegated, the presumption of the existence of facts justifying the specific exercise attaches alike to statutes, to municipal ordinances, and to orders of administrative bodies." Pacific States Box & Basket Co. v. White, 296 U.S. 176, 185–186, 56 S.Ct. 159, 163, 80 L.Ed. 138 (1935).

■ The standards of pleading to which a complaint is held on a motion to dismiss are more stringent when the complaint challenges a presumptively constitutional act:

"When * * * legislative action 'is called in question, if any state of facts reasonably can be conceived that would sustain it, there is a presumption of the existence of that state of facts, and one who assails the classification must carry the burden of showing by resort to common knowledge, or other matters which may be judicially noticed, or to other legitimate proof, that the action is arbitrary.' Borden's Farm Products Co. v. Baldwin, 293 U.S. 194, 209 [55 S.Ct. 187, 192, 79 L.Ed. 281]. The burden is not sustained by making allegations which are merely the general conclusions of law or fact. * * * Facts relied upon to rebut the presumption of constitutionality must be specifically set forth." Id., at 185, 56 S.Ct. at 163.

The Courts have continued to adhere to this standard of pleading in cases raising the presumption of constitutionality despite adoption of the Federal Rules of Civil Procedure. Package Closure Corporation v. Sealright Co., 4 F. R.D. 114, 117–118 (S.D.N.Y.1943); Stanton v. United States, 434 F.2d 1273, 1276 (5th Cir. 1970); Noreen v. Van Dyke, 133 F.Supp. 142, 145 (D.Minn. 1955); Idaho Maryland Mines Corp. v. United States, 104 F.Supp. 576, 581, 122 Ct.Cl. 670 (1952).

■ The complaints of plaintiffs Smith, Jacobson and Boise Cascade are wholly conclusory. The complaint of plaintiff Western Hotels is also conclusory with the exception of the allegations as to depreciation in assessed value. The law is clear that loss in value alone is insufficient to establish an unconstitutional "taking" of private property. Steel Hill Development, Inc. v. Town of Sanbornton, 469 F.2d 956, 963 (1st Cir. 1972) (loss less than "worthless" insufficient to establish a taking); virtual total loss of value was insufficient in Consolidated Rock Products Co. v. City of Los Angeles, 57 Cal.2d 515, 20 Cal.Rptr. 638, 370 P.2d 342, and Candlestick Properties, Inc. v. San Francisco Bay Cons. & Dev. Comm., 11 Cal. App.3d 557, 89 Cal.Rptr. 897. Even Justice Holmes' landmark decision in Pennsylvania Coal, supra, described depreciation in value as but "one factor" for consideration in determining the limits on the police power. Pennsylvania Coal, supra, 260 U.S. at 413, 43 S.Ct. 158. The conclusive statement on this question is found in a recent opinion of the Supreme Court:

"There is no set formula to determine where regulation ends and taking begins. Although a comparison of values before and after is relevant, see Pennsylvania Coal Co. v. Mahon, * * * it is by no means conclusive." Goldblatt v. Hempstead, 369 U.S. 590, 594, 82 S.Ct. 987, 990, 8 L. Ed.2d 130 (1962).

■ Plaintiffs have not met their burden of "specifically setting forth" facts sufficient, if proved, to rebut the presumption of constitutionality. The line facts specifically pleaded are, in themselves, inconclusive as to the question of the constitutionality of the Ordinance. The complaints must be dismissed.

It must be observed that one of the reasons for the presumption is to place

438

the burden of proof on the party challenging the act; the burden is thus placed out of respect for the legislative process. The courts are traditionally reluctant to upset a legislative or administrative enactment without the most thorough factual presentation. That is even more true in cases such as these where application of a general statement depends on the facts of each case. United States v. Central Eureka Mining Co., 357 U.S. 155, 168, 78 S.Ct. 1097, 2 L.Ed. 2d 1228 (1958). We are not reluctant, therefore, to adhere to the strict pleading requirements of the presumption of constitutionality to better insure the quality of factual presentation necessary to reach the merits of the cases if the complaints should be amended and the cases re-presented. We also note that the more stringent pleading standards in such cases are not insurmountable and that the Supreme Court has looked with disfavor on proponents of acts subject to the presumption of constitutionality where the proponents have themselves cut short the fact-finding process by interjecting motions to dismiss. See: Borden's Farm Products Co. v. Baldwin, 293 U.S. 194, 55 S.Ct. 187, 79 L.Ed. 281 (1934), and O'Gorman and Young, Inc. v. Hartford Fire Insurance Co., 282 U.S. 251, 51 S.Ct. 130, 75 L.Ed. 324 (1931).

### Objections to Parties.

 The motions to dismiss challenge the complaints for failure to allege a cause of action against the individual parties. The vehicle of the inverse condemnation alleged in each complaint is the Land Use Ordinance. The Land Use Ordinance is the product of TRPA action. TRPA is clearly a proper party to an action for equitable relief. Whether the other parties defendant may be liable for the effects of this Ordinance is a more difficult question.

 The Kingsbury General Improvement District (KGID) is a named defendant in the Western Hotels complaint. The Incline Village General Improvement District was dismissed as a defendant by stipulation in the Boise Cascade case. Western alleges that KGID has imposed special assessments and ad valorem taxes on its property based on pre-Ordinance classifications. These allegations (which KGID denies in part in an affidavit) are outside the jurisdiction of this Court until they are presented for appropriate administrative action pursuant to N.R.S. 41.036. These allegations clearly fail to establish a cause of action for inverse condemnation.

 Each of the complaints name as defendant the County in which the respective property is found. Boise Cascade also names the Board of County Commissioners. Smith and Jacobson allege no actions by the Counties, no damage as a result of County actions and request no relief against the Counties. The Counties are entitled to be dismissed from the Smith and Jacobson complaints.

Boise Cascade and Western Hotels argue that the Counties are liable for the effects of the LUO because the Counties have the duty of enforcing the LUO and the obligation of funding TRPA. It is also pointed out that the Counties appoint one representative to the governing body. The Counties, however, had no part in enacting the Tahoe Regional Planning Compact nor did they legislate the Land Use Ordinance. The duty to enforce and finance TRPA actions was thrust on the Counties by the Compact. While TRPA may be an agent of the States, it is clearly not an agent of the Counties. If a cause of action is made out against TRPA, it will not constitute a cause of action against the Counties. The requests of these plaintiffs for injunctive relief against the enforcement by the Counties of the LUO may be considered at such time as LUO is invalidated and the Counties persist in enforcing it. Such relief is premature at this time. Similarly, the relief of refunded taxes is premature until such time as those claims have been considered in the administrative proceedings provided by Nevada pursuant to N. R.S. 354.220(4).

The complaints also name the State of Nevada as a defendant in these actions. Boise Cascade has also named the State of California in its complaint but the complaint has not as yet been served on that party. The parties argue the statement of a cause of action against the State as if it depended on whether TRPA is an agency of the State or a separate legal entity. In our view, it is unnecessary to reach this question.

■ TRPA is a body of limited powers. Those powers are enumerated in the Tahoe Regional Planning Compact. The causes of action here presented seek relief for the alleged unconstitutionality of the actions of the TRPA, or, in the alternative, for compensation for loss of property because the constitutionally reasonable and necessary Ordinance constitutes a taking of private property. The authority of TRPA does not extend, of course, to unconstitutional acts. It is also agreed that the authority does not expressly extend to condemnation of private property. It cannot be said that TRPA authority extends to condemnation by implication.

" 'The right to condemn private property is * * * a creature of statute, pursuant to which it must clearly appear either by express grant or by necessary implication.'

" 'By necessary implication', above mentioned, vague or doubtful language must be excluded. It follows that if there is doubt, then there has been no grant of such power by the state." Beth Medrosh Hagadol v. City of Aurora, 126 Colo. 267, 272, 248 P. 2d 732, 735 (1952), citing Potashnik v. Public Service Co., 126 Colo. 98, 247 P.2d 137, 138.

Not only does the Compact lack express language as to condemnation powers, but it also fails to provide for the necessary funding of such power or the procedures for its exercise. We conclude that an act of condemnation is beyond the authority of TRPA.

A cause of action for inverse condemnation cannot be asserted against a regulatory body or agency which does not possess the power of eminent domain. Nichols on Eminent Domain, Vol. 2, § 621. Cf. State v. Rank, 293 F.2d 340 (9th Cir. 1961).

■ These suits, in alleging that LUO is unconstitutionally arbitrary or that it constitutes a taking requiring compensation, effectively allege that TRPA has exceeded its authority by enacting this Ordinance. A suit against an arm of the state, whether that arm is an agent or a separate legal entity, alleging actions by the arm exceeding its authority "is not regarded as a suit against the state, since the threatened action, being unauthorized, would not be that of the sovereign." 72 Am.Jur.2d 504–505, "States, Etc.," § 115. The cause of action sought to be established by these complaints is, therefore, a cause of action limited to declaratory and injunctive relief against the Land Use Ordinance of TRPA. If plaintiffs should establish that the Land Use Ordinance constitutes a taking of their properties, the Ordinance will be treated as action beyond TRPA authority and held invalid and no cause of action for damages will have been proved. The properties will be returned to the status enjoyed prior to the enactment of the Land Use Ordinance. The State of Nevada is entitled to be dismissed from these actions. Accordingly,

It hereby is ordered that the motions to dismiss of Kingsbury General Improvement District, of Washoe and Douglas Counties, and of the State of Nevada are granted, and that the motion to dismiss of Tahoe Regional Planning Agency is granted with leave to amend within sixty (60) days.