No. 18,643.

WILLIAM MARKER, ET AL. *v.* THE CITY OF
COLORADO SPRINGS, ET AL.
(336 P. [2d] 305)

Decided February 2, 1959.   Rehearing denied March 23, 1959.

Mr. DONALD E. LA MORA, for plaintiffs in error.

Mr. JOHN A. LOVE, Mr. FREDERICK T. HENRY, Messrs.
HANEY & HOWBERT, for defendants in error.

*En Banc.*

MR. CHIEF JUSTICE KNAUSS delivered the opinion of the Court.

WE shall refer to the parties to this writ of error as they appeared in the trial court, where plaintiffs in error were plaintiffs and defendants in error were defendants.

Pursuant to Rule 106, R.C.P. Colo., plaintiffs sought review of the action of the defendant City of Colorado Springs, Colorado, in granting a use variance permit to defendants in error Service and Vanderhoof to erect a medical office building on certain unimproved lots owned by them with office space for eight doctors. The property involved was zoned R-3, under which the lots were limited by the zoning ordinance to one and two family dwellings and other non-commercial and non-business uses.

Pursuant to the ordinances of the City of Colorado Springs the defendants Service and Vanderhoof applied to the Planning Commission of said city for a variance in the use of said property, and after notice and hearing, at which testimony was taken and recorded, the Planning Commission granted said variance and a permit to erect the contemplated structure.

The plaintiffs then appealed the action of the Planning Commission, pursuant to the zoning ordinance, to the City Council of Colorado Springs. The Council set the matter for hearing where the record and transcript of the proceedings before the Planning Commission were submitted including the testimony of the witnesses both for and against the application for the variance. After a full hearing the Council sustained the action of the Planning Commission and adopted an appropriate resolution which among other things recited:

"(a) That there are special or extraordinary circumstances or conditions applicable to the property involved, or to the intended use of the property that do not apply generally to the property or class of use in the same

zone, that a denial of the petition would result in undue property loss; and.

"(b) That such variance is necessary for the preservation and enjoyment of the property right of the petitioners; and

"(c) That such variance will not be detrimental to the public welfare or convenience, nor injurious to the property or improvements of other owners of property.

"Dated at Colorado Springs, Colorado this 10th day of December, 1957."

Plaintiffs then commenced the instant action in the District Court asking that the Use Variance Permit be set aside and that the City of Colorado Springs be enjoined from issuing a building permit thereon to applicants. Defendants in error submitted a complete transcript of the proceedings before the Planning Commission and the City Council, together with the findings and conclusions of the Planning Commission and the City Council.

Among the findings of the trial court is the following:

"(6) That it affirmatively appears from the record so certified that there were facts and evidence produced before the Planning Commission, and the City Council, which would justify such bodies in finding that, under the Ordinance, a Use Variance Permit should be granted."

As conclusions of law the trial court determined:

"The Court holds, as a matter of Law, that the City of Colorado Springs, acting through its Planning Commission and City Council, in granting to defendants W. C. Service and Richard Vanderhoof, a Use Variance Permit, did not exceed its jurisdiction of abuse and discretion, that the plaintiffs are not entitled to injunctive relief against any of the defendants and that the Use Variance Ordinance of the City of Colorado Springs is constitutional and valid."

From this judgment plaintiffs bring the cause here on writ of error.

Plaintiffs alleged "with the exception of Glockner-Penrose hospital the above described lots are situated among residential properties or unimproved land." They further alleged that the use variance ordinance of Colorado Springs under which the Planning Commission acted violates the Colorado constitution in that it "deprives plaintiffs herein of their right of acquiring, possessing and protecting property and seeking and obtaining their safety and happiness in their property." They further asserted in their petition for relief that said ordinance "deprives plaintiffs of their property without due process of law" and "deprives plaintiffs of equal protection of the laws."

In any zoning case the factual situation, the ordinance involved and the law as announced by this court, control the ultimate decision as to whether an inferior tribunal has abused its discretion or acted arbitrarily or capriciously.

The question here presented is fully answered in *State Civil Service Commission v. Hazlett,* 119 Colo. 173, 201 P. (2d) 616, where it is stated:

"The scope of review in certiorari proceedings, and the authority of courts to interfere with the findings of tribunals vested with exclusive jurisdiction to determine particular issues, have, by a long line of decisions, been judicially defined. We cannot consider herein whether the commission's findings are right or wrong, substitute our judgment for that of the commission, or interfere in any manner with the commission's findings if there is *any* competent evidence to support the same." (Emphasis supplied.)

We find ample evidence in this record to sustain the findings of the bodies vested under the ordinance with authority to a determination of the issues presented. We find nothing arbitrary or capricious in the proceedings had or conclusions reached.

The very purpose of such an ordinance is to vest the fact finding body with authority to relieve a prop-

erty owner of hardship which might ensue in the event the zoning ordinance was strictly enforced. It appears from the record that the property in question has never been improved. It is on a corner, adjacent to a large and favorably known hospital.

At the hearing before the City Council, one of the witnesses for applicants testified that he originally had been opposed to the erection of the medical building, but added:

" * * * It is inconceivable to think anybody would build a nice home or homes on this property and as we take a concensus of our opinions now, there could be a lot of things worse go in on that particular property. By outlawing the possibility of nice homes going in, which I don't believe any of you would want to build there, there is either going to be a building such as the one proposed here or remain a vacant lot, which is at the present time being used largely as a graveyard for neighborhood cats and dogs, or with Glockner-Penrose completing their new building, the demolition of the old, and getting a parking lot on the corner immediately catty-corner, it could be an ideal spot for a filling station, which most certainly would be worse than the proposed doctors' building. As we consider the possibilities that could happen to this property and what we could have as a neighbor between us and the mountains as far as view, traffic, and so on is concerned, we most definitely are in favor of the doctors and their building, * * *."

A councilman who voted against the variance stated at the hearing before the City Council that as a boy he played ball on these lots and concluded his remarks thus: "I do believe that if the doctors' building were the only thing that were there, perhaps it would not be objectionable, but I am fearful of what might happen to that neighborhood and I know that neighborhood."

■ Under our decisions we cannot interfere with the lawful determination of the properly constituted authority when, as here, the record discloses competent evi-

dence on which it is based, and the action of the inferior tribunal appears to be neither arbitrary nor capricious. The judgment is affirmed.

MR. JUSTICE SUTTON not participating.