THE BEATRICE BLOCK CLUB ASSOCIATION v FACEN

1. ZONING—VARIANCE—EVIDENCE.

A zoning variance changing defendant's property from residential to industrial use was properly granted where defendant's evidence demonstrated the existence of the three requirements specified in the city zoning code for the granting of a variance: (1) that defendant's property could not reasonably be used only for the purpose permitted in that zone (2) that defendant's plight was due to unique circumstances and not to general neighborhood conditions, *i.e.,* because of the commercial nature of defendant's block, reasonable financing for residential purposes could not, *as a practical matter, be obtained,* and (3) that the use authorized by the variance would not alter the essential character of the locality in that other business places were located in the same neighborhood, including four businesses in the same block as defendant's property (Detroit Zoning Code, § 62.0403).

2. ZONING—VARIANCE—UNIQUE CIRCUMSTANCES.

The "unique circumstances" justifying a zoning variance means that the hardship is not shared by all other property owners and that the hardship complained of is suffered by the property directly, and not merely by the property of others; however, it is not required that only a single ownership parcel of land be affected by the unique circumstances in order to qualify for relief; the unique circumstances may affect land having two owners.

Appeal from Wayne, David C. Vokes, J. Submitted Division 1 March 16, 1972, at Detroit. (Docket No. 12371.) Decided April 28, 1972.

Complaint by the Beatrice Block Club Association and certain of its members against Tommy

REFERENCES FOR POINTS IN HEADNOTES
[1] 58 Am Jur, Zoning § 200.
[2] 58 Am Jur, Zoning § 203 *et seq.*

Lee Facen, Alphonso R. Harper, Detroit Board of Zoning Appeals, and Detroit Department of Buildings and Safety Engineering for superintending control to nullify a zoning variance. Judgment for defendants. Plaintiffs appeal. Affirmed.

*Dykema, Gossett, Spencer, Goodnow & Trigg* (by *Donald S. Young* and *Martin C. Weisman*), for plaintiffs.

*Alphonso R. Harper*, for defendant Facen.

*Michael M. Glusac*, Corporation Counsel, and *John F. Hathway* and *Maureen P. Reilly*, Assistants Corporation Counsel, for defendant City of Detroit.

Before: R. B. BURNS, P. J., and HOLBROOK and QUINN, JJ.

HOLBROOK, J. Plaintiffs appeal from an order of the Wayne County Circuit Court which upheld the granting of a zoning variance to the defendant Tommy Lee Facen by the Board of Zoning Appeals of the City of Detroit. The zoning variance, which plaintiffs herein seek to have nullified, permits defendant Facen to construct an electrical contractor's shop and building in an area zoned for residential use.

Defendant Facen is the owner of Lots 1, 2, 3, and 4, each 20 feet wide, in Visger Heights Subdivision, located at 12201 Visger Road, between Beatrice and Annabelle Streets in the City of Detroit. In 1969, defendant Facen sought a building permit to construct a one story, 60-foot by 80-foot commercial building on three of the lots, and to use the other lot for parking. The permit was denied because the property is within an R-2 Dis-

trict. The city council denied a request for a rezoning of the one block stretch, including the Facen property, from R-2 to B-4. An application to the Buildings and Safety Engineering Department for a permit was made on December 11, 1970, and denied. The defendant Facen then appealed to the Board of Zoning Appeals, and public hearings were held on January 12, 19, and 26, March 23, and April 27, 1971. On April 30, 1971, the Board of Zoning Appeals issued its decision and order granting the variance sought by defendant Facen, and made the following findings:

"The proposed use is a one-story electrical contractor's shop and office, 60 feet by 80 feet. Off-street parking is included in the plan for this project.

* * *

"This property cannot be reasonably used for a purpose permitted in this zoning district for the following reasons:

"Building a single or two-family dwelling in a block where there are commercial buildings occupied by a restaurant, a beauty shop, a barber shop and a burger house; the block across the street being occupied by a large city playground, would not lend itself to residential living and it would be difficult to get financing.

"There is testimony in the record that FHA does not finance homes adjacent to commercial property.

"It was further testified that these lots were subdivided into 20-foot lots, and according to the present zoning ordinance, it would require almost three lots in order to build a home. This, in effect, would vest-pocket one home within a block of commercial uses.

"It was further testified that this small store and use would not generate additional heavy traffic in the area.

"If a dwelling is built in this block, it would be unique because the five other buildings are commercial. The testimony brings out further that this would cause a great loss in value because of the proximity to the commercial property and would make this property

undesirable for resale. All adjoining real estate, with the exception of one 20-foot lot, is presently devoted to commercial uses in this block.

"It is further unique because of its location. It is located on a major thoroughfare. From Fort Street to Campbell Street in River Rouge, there are commercial buildings, such as, a trucking concern, bars, restaurants, beauty parlors, dry cleaners, shoe shine parlors, a hat shop, a laundromat, a gasoline station, a grocery store and a drug store. These are all within an 8- or 9-block area, which has approximately 16 houses within this area. These factors render the site as a most undesirable site for the single or two-family residential uses for which it is zoned.

"It was further testified by a realtor, that the land at this time will not attract a developer for a purpose consistent with the present zoning ordinance, and that the land is of a commercial character.

"Because of the above facts, the granting of this requested variance will not change the essential character of this locality."

On May 28, 1971, the plaintiff, a neighborhood block club association, filed suit in circuit court asking the court to exercise its power of superintending control over the Board of Zoning Appeals for the City of Detroit nullifying the variance granted by the Board to defendant Facen, on April 30, 1971.

On July 11, 1971, plaintiffs moved for a preliminary injunction enjoining defendant Facen from proceeding with the construction of the proposed electrical contractor's office and building during the pendency of the proceedings before the circuit court. At the hearing on the motion, on June 18, 1971, counsel for defendant Facen agreed to refrain from construction until July 16, 1971, and the circuit court directed that the case be advanced for trial on a date prior thereto. The case was called for hearing before the Honorable David

C. Vokes, sitting as a circuit judge, on July 12, 1971. Briefs were filed by counsel for the respective parties and oral arguments were presented by counsel (including counsel for the Zoning Board) for all parties. Because this case involves an appeal from a decision of the Zoning Board, no testimony was taken or proofs produced at the hearing before the circuit court.

On July 19, 1971, the court rendered an opinion denying the relief sought. Judge Vokes, noting the uniqueness of the character of the particular block in which defendant Facen's lots are situated, stated:

"In the particular block in question, on the north side of Visger Road opposite defendant's lots, is located Stephen J. Piwok memorial playground. On the south side, we find the four 20-foot vacant lots, two adjacent vacant lots, then a small dwelling on the rear of a lot [20' wide], and the balance of the block on that side is occupied by commercial buildings in which are located a beauty parlor, a barber shop, and two restaurants."

The court then referred to the testimony received at the hearing before the Zoning Board of Appeals of two real-estate men as to the problems involved in financing a dwelling on these lots and also the possibility of locating any dwelling in this particular block; also, to the fact that members of the Board had made field inspections and that the Board had found that "the requested variance would not change the essential character of the locality". Finally, the court stated:

"It appears that the power of this court in considering this matter is limited to determining whether or not there was sufficient evidence introduced at the hearings before the Board of Zoning Appeals to justify the order entered by that body. All of the cases say that this court cannot substitute its judgment for the judg-

ment of the members of that board. The court has reviewed the transcripts of the proceedings before that board and the evidence introduced before the board at its various hearings. This court cannot say that there was not sufficient evidence adduced to substantiate the finding of the Board of Zoning Appeals. The court will, therefore, deny plaintiffs' claim of relief and a judgment will be entered for the defendants in this cause."

Plaintiffs brought on for hearing before the circuit court a motion to enjoin defendant Facen from proceeding with construction of the proposed electrical contractor's office during the pendency of this appeal, and a motion to omit transmission of the circuit court transcript to the Court of Appeals. The circuit court denied plaintiffs' motion for the injunction, and granted plaintiffs' motion to omit transmission of the transcript to this Court.

We conclude that there is only one issue presented on this appeal.

## I.

Was the variance granted by the Board of Zoning Appeals of the City of Detroit to defendant Facen based upon standards authorized by law and supported by competent, material, and substantial evidence on the whole record?

The state enabling act, MCLA 125.585; MSA 5.2935, provides that a city may have a board of zoning appeals authorized to grant a variance upon a showing of practical difficulties or unnecessary hardship. As permitted by the enabling act, the City of Detroit enacted ordinance No. 390-G, the official zoning code of the City of Detroit, specifically § 62.0403 which provides as follows:

"The board may vary the requirements of this ordi-

nance in cases where strict application of the provisions hereof will result in practical difficulty or unnecessary hardship that would deprive the owner of reasonable use of land or building involved. Such variance shall be granted only in cases of property having unique characteristics which prevent reasonable use of the property as zoned.

"A variance shall not be granted unless the Board finds, on the basis of substantial evidence, that the property cannot reasonably be used in a manner consistent with the existing zoning, and before the Board may exercise its discretion and grant a use variance on the grounds of unnecessary hardship, the record must demonstrate:

"(a) That the property in question cannot be reasonably used only for a purpose permitted in that zone, and

"(b) That the plight of the owner is due to unique circumstances and not to general conditions in the neighborhood, and

"(c) That the use to be authorized by the variance will not alter the essential character of the locality."

We now consider the import of the pertinent testimony presented before the Board of Zoning Appeals in order to determine whether the findings and decision of that body were justified.

Mr. Facen, a defendant in this case, testified in pertinent part that he had lived in the neighborhood for about 21 years on Deacon Street, a block and a half from the proposed location of his new building, the subject of this suit; that he paid $6,000 for the four lots and expended an additional $4,000 for plans and specifications in attempting to get a building permit; that at the time of purchase he was not aware that the property was zoned residential; and that if he was not now able to build the building on the property he would suffer hardship. He talked to persons who desired the property for a dwelling, but that they found it was too expensive to build a home on, and that he had

talked to a couple of builders who had attempted to obtain financing to build a residence on the land, and that he concluded from those conversations that there was no possibility of building a dwelling house on this property.

Mr. Max Serlin, a builder, testified in pertinent part that it is pretty difficult to get financing to build a residence on the property in question; that the financing available was not sufficient to use the property for residential purposes; that a person could get conventional financing, but that it would require at least a 40 to 50% down payment, which is difficult to obtain; that FHA financing could be obtained, but not a high enough FHA appraisal to warrant construction of houses on the property.

Mr. Lewis W. Carter, who had been in the real estate business for 14 years, testified in part that commercial structures predominate in the three blocks extending from one block west of Annabelle and to one block east of Beatrice; that the commercial enterprises in that area consist of a truck company, laundry, barber shop, and restaurant, and that a public playground is across the block from which the subject property is located, and further down to the east is a church on a corner and a medical clinic. He gave his opinion that he would doubt very seriously if you could get anyone interested in Mr. Facen's property for residential purposes because it is closely adjacent to so much commercial property; that FHA regulations would interfere with financing; and that a residence on the subject property would be of very little or no value. He stated that he had the subject property listed for over two years, and that he tried real hard to sell it, but was unable to do so, because it was so close to commercial property and FHA

financing was not available. Mr. Carter stated that he was aware of the residential zoning of the property at the time he tried to sell it.

Some of the plaintiffs were sworn and testified at the hearing opposing the granting of the variance by the Zoning Board of Appeals. Their testimony, in general, conflicted with the testimony hereinbefore set forth.

In order for the variance to have been properly granted, unnecessary hardship must appear in the record demonstrating the existence of the three requirements set forth in the ordinance:

"(a) That the property in question cannot be reasonably used only for a purpose permitted in that zone, and

"(b) That the plight of the owner is due to unique circumstances and not to general conditions in the neighborhood, and

"(c) That the use to be authorized by the variance will not alter the essential character of the locality."

It appears to this Court that the requirement (a) is established by reason of the testimony indicating that the property cannot reasonably be used for residential purposes.

As to requirement (b), we turn to the definition of "unique circumstances" found in 43 Words and Phrases, p 496, where it is stated:

"The phrase 'unique circumstances' as respects variance from the zoning ordinance is not to be construed as 'unique hardship' as though there were a requirement for proving something more severe than an unnecessary hardship. *Village of Bronxville v Francis,* 1 AD2d 236; 150 NYS2d 906, 908 [1956.]"

Accepting this definition, we conclude that what is necessary to be shown is that there is an unnecessary hardship resulting to the property. Plaintiffs

assert that defendant Facen is not entitled to a variance because his situation is not unique to his property. It may also extend to the 40-foot piece of property immediately adjacent to his. This may be true. The courts have held, contrary to the contention of plaintiffs that the predicament of the property must be "due to unique circumstances and not to general conditions in the neighborhood". This does not require that only a single ownership parcel of land be affected by the unique circumstances in the neighborhood in order to qualify for relief, *i.e.,* for the unique circumstances may affect land having two owners rather than one. The courts have repeatedly emphasized that the hardship to be unique is "not shared by *all* others" (emphasis supplied), *Tireman-Joy-Chicago Improvement Association v Chernick,* 361 Mich 211, 216 (1960), and "that the hardship of which he complains is suffered by his property directly, and not *merely* by others". (Emphasis supplied.) *Puritan-Greenfield Improvement Association v Leo,* 7 Mich App 659, 670 (1967).

Facen's lots and the two 20-foot lots immediately adjacent to his, because of their unique location, suffer from circumstances which do not affect any other block in the whole neighborhood. Mr. Canevaro of the City Plan Commission testified: "It's definitely a problem piece of property". As previously stated, the record discloses that the property cannot be used for residential purposes without an unnecessary hardship resulting.

Requirement (c) appears to be fully satisfied when considering the size, type, and specifications set forth for the construction of the building and the character of the locality which includes four places of business in the block where the subject property is located, together with a small resi-

dence on a single 20-foot lot, with the other property vacant. Directly across the street from this block is located a large public play yard. To the northeast on Visger Road is located a church with the first story completed, one-half below the level of the land and one-half above it. To the east of the church is a medical center. To the northwest on Visger Road is a large area devoted to servicing a trucking business including an office, storage buildings, and other facilities. Residences are on the south side of Visger Road, to the east of the property in question.

We are constrained to rule that the findings of the Zoning Board of Appeals are supported by competent, material, and substantial evidence on the whole record as required by Const 1963, art 6, § 28. A reviewing court will look no further, and the Board's decision is final "insofar as it involves discretion or the finding of facts." *Indian Village Manor Co v Detroit,* 5 Mich App 679, 686 (1967). See, also, *Tireman-Joy-Chicago Improvement Association v Chernick, supra.*

The courts have uniformly refused to "sit as a final zoning board." *McClain v Hazel Park,* 357 Mich 459, 460 (1959).

Denial by the circuit court of appellants' request for an order of superintending control is affirmed. No costs are awarded since a public question is involved.

All concurred.