**CITY AND BOROUGH OF JUNEAU, Appellant,**

v.

**Robert THIBODEAU, d/b/a Shoprite Market, Appellee.**

**No. 3636.**

Supreme Court of Alaska.

May 11, 1979.

Gerald L. Sharp, City and Borough Atty., Juneau, for appellant.

James F. Petersen, Juneau, for appellee.

OPINION

Before BOOCHEVER, C. J., RABINOWITZ, CONNOR and BURKE, JJ., and SCHULZ, Superior Court Judge.

RABINOWITZ, Justice.

This appeal arises from a Memorandum of Decision and Order of the superior court reversing the decision of the Assembly of the City and Borough of Juneau denying Thibodeau a variance to the local zoning ordinance requirement for off-street parking spaces. The variance previously had been granted by the municipality's planning commission sitting as a board of adjustment [1] and had been appealed to the assembly by objecting neighboring landowners. The superior court remanded the case to the board of adjustment with instructions for the board to make express findings of fact based on a hearing record showing evidence in support of its findings.

Robert Thibodeau is the original owner of the Shoprite Market, a general store located within the Douglas community in the City and Borough of Juneau, Alaska. The store was built by Thibodeau in 1962 and it and the adjoining parking lot occupy approximately one-half city block in area. Prior to 1975, the zoning of the property was split, the store proper being located in the C2

---

1. CBJ 49.25.800, a provision of the zoning regulations of the City and Borough of Juneau, provides that the Planning Commission of Juneau is to sit as a board of adjustment to hear appeals from decisions of administrative officials and to grant exceptions to and issue variances from the literal provisions of the zoning code. *See* CBJ 49.25.802.

(commercial) Douglas district while the adjacent parking lot was located in the RML (multiple family) zoned area. Pursuant to Thibodeau's plans for expansion of the market, he applied to the city and borough planning commission in the spring of 1975 for rezoning of the parking lot for commercial uses. The rezoning was accomplished in May and June of 1975, and Thibodeau subsequently applied to the planning commission, sitting as a board of adjustment, for a variance reducing the required number of off-street parking spaces so that he could carry out his plans to enlarge the store building into the parking area. The variance was granted by the board and the number of off-street parking spaces required was reduced from thirty to sixteen. Adjacent property owners appealed the grant of the variance to the city and borough assembly. After a hearing before the members of the assembly, the assembly reversed the decision of the board of adjustment which had granted the variance. Thibodeau then appealed to the superior court.

Initially, we note that Thibodeau has challenged this court's jurisdiction to decide the appeal. Thibodeau urges that the judgment of the superior court was not a "final judgment" within the meaning of Alaska Appellate Rule 5[2] from which an appeal may be taken because the superior court's remand was based on the inadequacy of the hearing record and findings of the board of adjustment and because "Mr. Thibodeau was neither granted nor denied his variance."

The question of the finality of a judgment for purposes of conferring appellate jurisdiction on this court has been addressed previously on numerous occasions.[3] The test which was adopted in *Greater Anchorage Area Borough v. City of Anchorage,* 504 P.2d 1027 (Alaska 1972), for determining finality is essentially a practical one. In *GAAB* we stated:

> The basic thrust of the finality requirement is that the judgment must be one which disposes of the entire case, '. . . one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'[4]

We further held that "the reviewing court should look to the substance and effect, rather than form, of the rendering court's judgment, and focus primarily on the operational or 'decretal' language therein."[5]

In ordinary civil litigation, this practical definition of finality adequately distinguishes the cases which should be heard on appeal to this court from those cases which should not be considered because they have not been disposed of completely on the merits in the superior court. However, in specifically reviewing cases involving both civil and criminal matters in which the superior court's disposition of the issues before it was undertaken as an intermediate appellate court sitting in review of either the judgment of a district court or the decision of an administrative agency, we are cognizant that application of the *GAAB* test for finality has generated uneven results in our prior opinions. Our experience with cases involving decisions of the superior court

2. Alaska R.App.P. 5 provides:
   *Judgments From Which Appeal May Be Taken.*
   An appeal may be taken to this court from a final judgment entered by the superior court or a judge thereof in any action or proceeding, civil or criminal, except that the state shall have a right to appeal in criminal cases only to test the sufficiency of the indictment or on the ground that the sentence is too lenient.

3. Recent cases which have interpreted the finality requirement include *Johnson v. State,* 577 P.2d 706, 709 (Alaska 1978); *Adams v. Ross,* 551 P.2d 948, 950 (Alaska 1976); *Breese v. Smith,* 501 P.2d 159 (Alaska 1972).

4. *Greater Anchorage Area Borough v. City of Anchorage,* 504 P.2d 1027, 1030 (Alaska 1972) (footnote omitted), *quoting Catlin v. United States,* 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911, 916 (1944).

5. 504 P.2d at 1030–31 (footnotes omitted). *See McGhee v. Leitner,* 41 F.Supp. 674 (W.D.Wis. 1941); *Patrick v. Sedwick,* 387 P.2d 294 (Alaska 1963); *In re Mountain View Util. Dist. No. 1,* 359 P.2d 951 (Alaska 1961); *Levine v. Empire Savings and Loan Ass'n,* 557 P.2d 386 (Colo. 1976).

sitting as an appellate court in a variety of factual circumstances has convinced us of the need to clarify further the rules of appellate review with respect to these kinds of cases. Since the present case presents exactly the sort of finality question which has caused difficulties in the past, we have undertaken here to explain finality as it applies to review of intermediate appellate decisions of the superior court.

■ We think the better rule is that a decision of a superior court, acting as an intermediate appellate court, which reverses the judgment of the court below or the decision of an administrative agency and remands for further proceedings, is a non-final order of the superior court. Our decision on this point requires us to overrule portions of our opinion in *Greater Anchorage Area Borough v. City of Anchorage*, 504 P.2d 1027 (Alaska 1972); [6] nevertheless, we believe this step to be necessary in this case.

*GAAB* involved a controversy between the City of Anchorage and the Greater Anchorage Area Borough regarding the denial of a permit from the Alaska Public Utilities Commission to install certain utility poles and powerlines. The city had appealed to the superior court from the decision of the Public Utilities Commission. Part of the original conflict was resolved by stipulation of the parties, and the superior court referred the remaining matter before it to the Public Utilities Commission for resolution. The borough then appealed to this court. After stating the practical test for finality of judgments which is quoted immediately above, we held that appellate jurisdiction existed in this court to review the decision of the superior court. We based this holding on our conclusion "that the superior court meant to completely dispose of the sole remaining issue pending before it, and that it did not intend to retain jurisdiction." [7]

We are now of the view that an order of the superior court issued in its appellate capacity which remands for further proceedings is not a final judgment for purposes of Alaska Appellate Rule 5. However, a party to such a remand may properly invoke our discretionary review jurisdiction where the requirements of Appellate Rules 23 and 24(a) are met.[8] We think this

---

**6.** To the extent that *Alaska Pubic Util. Comm'n v. Chugach Elec. Ass'n*, 580 P.2d 687 (Alaska 1978), and *Fischback & Moore of Alaska, Inc. v. Lynn*, 407 P.2d 174 (Alaska 1965), rely on the same rationale as *Greater Anchorage Area Borough v. City of Anchorage*, 504 P.2d 1027 (Alaska 1972), in finding finality in the judgments of the superior court remanding the cases to the Public Utilities Commission and the Workmen's Compensation Board respectively, they are also disapproved.

**7.** *Greater Anchorage Area Borough v. City of Anchorage*, 504 P.2d 1027, 1032 (Alaska 1972). Portions of our opinion in *GAAB* read:

We conclude that the substantial effect of the operational portion of the superior court's referral order was to completely dispose of the case pending before it.

Moreover, the superior court did not expressly retain jurisdiction in the case at bar. . . . The superior court spoke in terms of 'appeal' from the PUC's decision rather than 'retained jurisdiction.' Appealing to a court for the purpose of obtaining review of an inferior tribunal's order and returning to a court with retained jurisdiction for the purpose of continuing litigation are separate and distinct legal processes. In this case, the lower court was merely apprising the parties of their rights to seek judicial review of an administrative adjudication under the Alaska Administrative Procedure Act. We conclude that the lower court did not mean to retain jurisdiction.

*Id.* (footnote omitted).

**8.** Alaska R.App.P. 23 provides for review of non-appealable orders or decisions as follows:

An aggrieved party, including the State of Alaska, may petition this court as set forth in Rule 24 to be permitted to review any order or decision of the superior court, not otherwise appealable under Rule 5, in any action or proceeding, civil or criminal, as follows:

(a) From interlocutory orders granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions.

(b) From interlocutory orders appointing receivers or refusing orders to terminate receiverships or to take steps to accomplish the purposes thereof, such as directing sales or other disposals of property.

(c) From any order affecting a substantial right in an action or proceeding which either (1) in effect terminates the proceeding or action and prevents a final judgment therein; or (2) discontinues the action; or (3) grants a new trial.

approach is more consistent with the stand we have taken regarding the question of finality in criminal cases and that it represents the soundest approach to the exercise of final appellate jurisdiction by this court.[9]

■ *State v. Browder*, 486 P.2d 925 (Alaska 1971), thoroughly considered the reasons for discretionary review by this court of decisions by the superior court which are not otherwise appealable under Appellate Rule 5. In *Browder*, this court entertained a petition for review brought by the state from a judgment of the superior court reversing a criminal contempt conviction by the district court and remanding the matter for trial by jury in the district court. We held that even though appeal as a matter of right pursuant to Appellate

Rule 5 was foreclosed because AS 22.05.-010[10] and Rule 5 prohibited the state from appealing a criminal case except "to test the sufficiency of the indictment or on the ground that the sentence is too lenient,"[11] this court could consider the superior court's decision on petition for review by the state. In *Browder* we stated that:

> We think it significant that the legislature in prescribing this court's jurisdiction specifically provided that 'The supreme court may issue injunctions, writs of review, mandamus, certiorari, prohibition, habeas corpus, and all other writs necessary or proper to the complete exercise of its jurisdiction.' In our view this provision is a clear manifestation of the legislature's intent that the supreme court would be able to exercise its final

---

(d) Where such an order or decision involves a controlling question of law as to which there is substantial ground for difference of opinion, and where an immediate and present review of such order or decision may materially advance the ultimate termination of the litigation.

(e) Where postponement of review until normal appeal may be taken from a final judgment will result in injustice because of impairment of a legal right, or because of unnecessary delay, expense, hardship or other related factors.

Appellate Rule 24(a) limits the granting of petitions for review, in the discretion of the court:

*When Granted.* A review is not a matter of right, but will be granted only: (1) where the order or decision sought to be reviewed is of such substance and importance as to justify deviation from the normal appellate procedure by way of appeal and to require the immediate attention of this court; or (2) where the sound policy behind the general rule of requiring appeals to be taken only from final judgments is outweighed by the claim of the individual case that justice demands a present and immediate review of a particular nonappealable order or decision; or (3) where the superior court has so far departed from the accepted and usual course of judicial proceedings, or so far sanctioned such a departure by an inferior court or administrative tribunal, as to call for this court's power of supervision and review.

9. We see no reason that criminal and civil cases should be treated differently on this precise point, nor do the Alaska Appellate Rules draw any distinction regarding finality of judgments. Alaska R.App.P. 5 provides:

An appeal may be taken to this court from a final judgment entered by the superior court or a judge thereof *in any action or proceeding, civil or criminal* . . . . [emphasis added]

Alaska R.App.P. 23 provides further that:

An aggrieved party, including the State of Alaska, may petition this court . . . to be permitted to review any order or decision of the superior court, not otherwise appealable under Rule 5, *in any action or proceeding, civil or criminal* . . . . [emphasis added]

It should be noted, though, that in criminal cases a reversal of a conviction by the superior court is treated differently than a remand. *See* note 14 *infra.*

10. AS 22.05.010(a) provides:

The supreme court has final appellate jurisdiction in all actions and proceedings. The supreme court may issue injunctions, writs of review, mandamus, certiorari, prohibition, habeas corpus, and all other writs necessary or proper to the complete exercise of its jurisdiction. Each justice may issue a writ of habeas corpus, upon petition by or on behalf of any person held in actual custody and may make the writ returnable before the justice himself or before the supreme court, or before any judge of the superior court of the state. An appeal to the supreme court is a matter of right, except that the state shall have no right of appeal in criminal cases, except to test the sufficiency of the indictment or information and under (b) of this section.

11. Alaska R.App.P. 5.

appellate jurisdiction other than by appeal.[12]

The exercise of discretionary review in *Browder* satisfied the constitutional requirement that final appellate jurisdiction be vested in the supreme court under article IV, section 2 of the Alaska Constitution.[13] As we discussed in *Browder*:

Unless the supreme court can fully implement its final appellate jurisdiction through use of its review jurisdiction, it will be extremely difficult, if not impossible, for this court to exercise proper control over the administration of criminal justice, and the development of rules of law in criminal trials. One can envision that erroneous rulings involving important questions of constitutional law will be made during a trial, or at the superior court appellate level, in favor of the accused. How are such mistakes to be corrected? Neither AS 22.05.010 nor Alaska's constitutional prohibition against double jeopardy requires that an erroneous non-final order or decision, favorable to the accused, must stand uncorrected.[14]

■ In a similar manner, the exercise of discretionary review in civil cases such as the one presently before us will insure that this court has the opportunity to exercise final review of questions decided by the superior court in remanding a case whenever it is necessary to provide immediate guidance on a particular matter. To preserve this constitutionally imposed review function, a party need not have a further absolute right to review prior to final disposition of the litigation after remand by the superior court. Following final judgment in the trial courts, a party always may appeal to the supreme court as a matter of right.[15]

■ Our decision that the superior court order before us in this case is not a final judgment for purposes of appeal pursuant to Appellate Rule 5 does not preclude review of the merits of the city and borough's contentions in any event. This court has not hesitated to treat an appeal improperly brought from a non-final judgment as a petition for review · in order to prevent hardship and injustice.[16] In the present case, we find that such hardship exists not only because the City and Borough of Juneau has raised a "substantial right" in regard to an order of the superior court which in effect "grants a new trial"[17] before the board of adjustment on the merits of the variance, but because the city and borough may have relied on our decision in *Greater Anchorage Area Borough v. City of Anchorage*, 504 P.2d 1027 (Alaska 1972), in bringing an appeal instead of a petition for review to this court.[18]

Turning to the merits of the appeal, we are called upon to review the standards for

**12.** *State v. Browder*, 486 P.2d 925, 930 (Alaska 1972).

**13.** Alaska Const. art. IV, § 2(a) provides, in part: "The supreme court shall be the highest court of the State, with final appellate jurisdiction." This section of the constitution is implemented by the legislature in AS 22.05.010(a), which is reproduced in note 10 *supra*.

**14.** *State v. Browder*, 486 P.2d 925, 931 (Alaska 1972) (footnote omitted). We note here that our decision to treat the superior court order remanding a criminal proceeding to the district court as a non-final decision under Alaska Appellate Rule 5 does not affect our treatment of other criminal cases where the superior court enters a judgment of acquittal upon appeal of a criminal conviction from district court. In the latter type of cases, the entry of acquittal is clearly a final judgment for purposes of appellate review jurisdiction. *See State v. Gibson*, 543 P.2d 406, 409 n.6 (Alaska 1975); *State v. Marathon Oil Co.*, 528 P.2d 293 (Alaska 1974).

**15.** *See, e. g., State v. DeVoe*, 560 P.2d 12 (Alaska 1977).

**16.** *See Hanby v. State*, 479 P.2d 486 (Alaska 1970); *Leege v. Strand*, 384 P.2d 665 (Alaska 1963); *In re Mountain View Util. Dist. No. 1*, 359 P.2d 951 (Alaska 1961); *Stokes v. Van Seventer*, 355 P.2d 594 (Alaska 1960).

**17.** Alaska R.App.P. 23(d).

**18.** *See* Alaska R.App.P. 24(a)(2) which provides that a petition for review will be granted:

Where the sound policy behind the general rule of requiring appeals to be taken only from final judgments is outweighed by the claim of the individual case that justice demands a present and immediate review of a particular non-appealable order or decision.

granting a variance which the superior court instructed the board of adjustment to apply. Since we are convinced that the superior court adopted an incorrect test for the granting of variances under the applicable zoning ordinance of the City and Borough of Juneau and that the city and borough assembly in fact applied the proper standards, we reverse the superior court's order and reinstate the decision of the assembly which reversed the board of adjustment's original decision granting the variance.[19]

It is established in zoning law that general zoning ordinances, while designed to encourage the best overall use of land in a city or borough,[20] may not be well adapted to deal with unusual individualized situations which sometimes occur and result in more stringent burdens being placed on some parcels of land than on others. Variance provisions thus fulfill a sort of "escape hatch"[21] or "safety valve"[22] function for the individual landholder who would suffer special hardships from the literal application of the terms of a particular zoning ordinance.[23]

Section 49.25.802(c) of the zoning code for the City and Borough of Juneau, which governs the grant of the variance in the present case, states in full:

(C) *Variances.* Where hardships and practical difficulties resulting from peculiarities of a specific property render it difficult to carry out the provisions of this chapter, the board may grant a variance in harmony with the general purpose and intent of this chapter. Such variances may vary any standard requirement or regulation of this chapter after the prescribed hearing and after it is shown that all of the foregoing conditions exist:

(1) Compliance with the strict letter of the restrictions would unreasonably prevent the owner from using the property for a permitted purpose or would render a conformity with such restrictions unnecessarily burdensome;

(2) That a grant of the variance applied for would do substantial justice to the applicant as well as to other property owners in the district;

**19.** Although the record does not reflect that, before hearing the appeal, the assembly notified all parties that the hearing was to be a de novo determination of the variance request, pursuant to the requirements of CBJ 49.25.806 and CBJ 01.50.030(e), the public was invited to participate in the hearing on the appeal, and the assembly did hear testimony from the applicant, Robert Thibodeau, and from Mr. and Mrs. F. D. Merritt who had brought the appeal. Further, the assembly had before it the pertinent documents and record of the proceedings before the board of adjustment including a transcript of the minutes of the hearing on the variance before the board. Thus, as discussed subsequently in this opinion, the assembly had before it an adequate record on which to base its specific findings and there is no need to remand this case to the board of adjustment for an additional hearing and further findings as ordered by the superior court.

**20.** The purposes and intent of the zoning ordinance of the City and Borough of Juneau are set out in CBJ 49.25.101:

To implement the comprehensive development plan for the city and borough; to encourage the most appropriate use of land; to conserve and stabilize the value of property; to aid in the rendering of fire and police protection; to provide adequate open space

for light and air; to lessen the congestion on streets; to give an orderly growth to the city and borough; to prevent undue concentrations of population; to improve the city and borough's appearance; to facilitate adequate provisions for community utilities and facilities such as water, sewerage, and electrical distribution systems, transportation, schools, parks, and other public requirements, and in general to promote public health, safety, and general welfare.

**21.** *Lincourt v. Zoning Bd. of Review,* 98 R.I. 305, 201 A.2d 482, 485 (1964).

**22.** *Coronet Homes, Inc. v. McKenzie,* 84 Nev. 250, 439 P.2d 219, 224 (1968); *Peirce v. Zoning Bd. of Adjustment,* 410 Pa. 262, 189 A.2d 138 (Pa.1963).

**23.** *Rubin v. Board of Directors,* 16 Cal.2d 119, 104 P.2d 1041 (1940); *Marker v. City of Colorado Springs,* 138 Colo. 485, 336 P.2d 305 (1959); *Nucholls v. Board of Adjustment,* 560 P.2d 556 (Okl.1976); *Bienz v. City of Dayton,* 29 Or.App. 761, 566 P.2d 904, 920 n.7 (1977). *See* D. Hagman, Urban Planning and Land Development Control Law § 106, at 196 (1971); 5 N. Williams, American Land Planning Law § 129.-01, at 11 (1975 and Supp.1977).

(3) Whether a lesser relaxation than that applied for would give substantial relief to the owner of the property involved and be more consistent with justice to other property owners;

(4) That relief can be granted in such a fashion that the spirit of the ordinance will be observed and public safety and welfare secured;

(5) That the authorization of such variance will not be materially detrimental to the public welfare or injurious to nearby property;

(6) The variance does not allow the property to be used for uses not otherwise allowed in the district involved. In authorizing a variance, the board may attach thereto conditions regarding the location, character, and other features of the proposed structures or uses as it finds necessary to carry out the spirit and purposes of this ordinance and in the public interest. A variance so authorized shall become void after the expiration of one year if no building permit has been issued in accordance with the plans for which such variance was authorized, except that

the board may extend the period of variance authorization without public hearing upon a finding that there has been no basic change in pertinent conditions surrounding the property at the time of the original approval.

In supplying content to these standards, the superior court focused on the words "practical difficulty" in the ordinance and essentially adopted the criteria for granting area variances articulated by the courts of New York and Rhode Island in interpreting their own variance provisions.[24]

The superior court's adoption of this "practical difficulty" test for the grant of a variance in the circumstances of the present case involved an implicit rejection of the "hardship" language in the Juneau ordinance, including the requirement that "peculiarities of the specific property" be implicated in complying with the ordinance. Other jurisdictions have judicially established a distinction among the standards applied to different types of variances—reserving the "practical difficulty" test for non-use type variances such as the one involved in the present case.[25] However, in

24. *In Westminister Corp. v. Zoning Bd. of Review*, 103 R.I. 381, 238 A.2d 353, 357 (1968), the Supreme Court of Rhode Island established that the test for an area variance "is whether a literal enforcement [of the zoning ordinance] would have an effect so adverse as to preclude the full enjoyment of the permitted use." The Rhode Island court further stated:

> Entitlement to relief in these cases depends upon a showing that the adverse effect of a literal enforcement of the ordinance precluding full enjoyment of the permitted use amounts to more than mere inconvenience. *Id.*

In New York, the test for an area variance requires that:

> [W]here the property owner will suffer significant economic injury by the application of an area standard ordinance, that standard can be justified only by a showing that the public health, safety and welfare will be served by upholding the application of the standard and denying the variance.

*Fulling v. Palumbo*, 21 N.Y.2d 30, 286 N.Y.S.2d 249, 253, 233 N.E.2d 272, 274 (1967). Once the municipality which seeks to deny the variance demonstrates that "some legitimate public interest will be served by the restriction," the property owner in New York must show that the ordinance as applied would deprive him of "any use of the property to which it is reason-

ably adapted, and that, as a result, the ordinance amounts to a taking of his property." *Id.* 286 N.Y.S.2d at 253, 233 N.E.2d at 274–75.

25. Customarily, the cases have concerned themselves with two kinds of variances: "use" variances which permit uses other than those prescribed by the zoning ordinance, and "non-use" or "area" variances which have no relation to a change in use but rather allow construction or alteration of a permitted structure in a manner not normally available under the ordinance. For example, area, height, density, set-back, and side and rear yard line restrictions are generally modifiable through area variances. 2 C. Rathkopf, The Law of Zoning and Planning § 45.1, at 45–1 (3d ed. 1972).

In New York, a practical distinction is made between use and area variances, and only use variances are subjected to the strict standard of "unnecessary hardship" while area variances may be granted upon proof of practical difficulty only. *Village of Bronxville v. Francis*, 1 A.D.2d 236, 150 N.Y.S.2d 906 (1956), *aff'd*, 1 N.Y.2d 839, 153 N.Y.S.2d 220, 135 N.E.2d 724 (1956). *See Viti v. Zoning Bd. of Review*, 92 R.I. 59, 166 A.2d 211 (1960). *See also Ivancovich v. City of Tucson Bd. of Adjustment*, 22 Ariz.App. 530, 529 P.2d 242, 248 (1974). The basis for this judicially adopted lesser require-

all the cases which have adopted the "practical difficulty" test, the ordinances involved have differed significantly from the Juneau zoning ordinance at issue here.

Importantly, the cases in which separate standards have been applied to use and area variances have all involved ordinances which were phrased in the disjunctive form (*i. e.*, hardships *or* practical difficulties) rather than in the conjunctive form (*i. e.*, hardships *and* practical difficulties).[26] Courts which have interpreted ordinances phrased in the conjunctive form have consistently required the applicant for a variance to satisfy both the practical difficulty and the hardship elements of the variance test.[27] The express language of CBJ 49.25.-802(c) fits into the latter category of ordinances, requiring that in order for the Ju-

neau board of adjustment to grant a variance both "*hardships and practical difficulties*" must exist. (emphasis added)

■■ Even more significant, the Juneau zoning ordinance expressly prohibits variances for uses not otherwise authorized in the zoning district.[28] Thus, unlike the jurisdictions which permit both use and area variances, if the "hardship" standard of the Juneau code does not apply to area variances, it has no application at all. This court should not presume that a legislative body has used superfluous words.[29] Thus, the hardship test must apply to the only type of variance which is permitted by the zoning ordinance—the area variance—and the superior court erred in following cases from other jurisdictions which were interpreting substantially different legislation.[30]

ment with respect to area variances is stated to be that in such cases, impact on the neighborhood is less pronounced and there is no change in the character of the area to be balanced against the needs of the particular applicant for a variance. *Village of Bronxville v. Francis*, 1 A.D.2d 236, 150 N.Y.S.2d at 909 (1956), *aff'd*, 1 N.Y.2d 839, 153 N.Y.S.2d 220, 135 N.E.2d 724 (1956). See 2 C. Rathkopf, The Law of Zoning and Planning § 45.5, at 45–24 (3d ed. 1972); 5 N. Williams, American Land Planning Law 145.04, at 121 (1975).

Presumably, a variance of off-street parking requirements fits within the non-use category as a variance in the manner in which a permitted use may be made of the land. *Overhill Bldg. Co. v. Delaney*, 28 N.Y.2d 449, 322 N.Y.S.2d 696, 698, 271 N.E.2d 537, 539 (N.Y.1971). However, it should be noted that in *Off Shore Restaurant Corp. v. Linden*, 30 N.Y.2d 160, 331 N.Y.S.2d 397, 404, 282 N.E.2d 299, 304 (1972), the court found that off-street parking requirements involve elements of both use and area variances depending on the reasons for the imposition of the particular restriction. *See also Alumni Control Bd. v. City of Lincoln*, 179 Neb. 194, 137 N.W.2d 800 (1965). The court in *Off Shore Restaurant* distinguished *Overhill* as involving parking restrictions defined in terms of office space available in the subject building, which is appropriately considered as an area variance. However, in *Off Shore Restaurant*, the parking requirements were related to the particular use being made of the property and a variance under those conditions would be required to meet the separate test for use variances. Since use variances are flatly prohibited by the Juneau zoning ordinance (CBJ 49.25.-802(c)), this distinction between the types of variances parking restrictions may qualify for could be interpreted as precluding all off-street

parking variances in the City and Borough of Juneau, regardless of the justifications advanced, solely on the ground that they constitute impermissible changes in the use of the property. Since neither party has brought this issue to our attention, however, we find it is unnecessary to decide it in this case in light of our decision that the variance should not have been granted in any event because it did not comply with other requirements of the variance provision of the zoning code.

26. *See McLean v. Solely*, 270 Md. 208, 310 A.2d 783 (1973); *Loyola Fed. Sav. & Loan Ass'n v. Buschman*, 227 Md. 243, 176 A.2d 355 (1961); *Heritage Hill Ass'n v. City of Grand Rapids*, 48 Mich.App. 765, 211 N.W.2d 77 (1973); *Indian Village Manor Co. v. City of Detroit*, 5 Mich. App. 679, 147 N.W.2d 731 (1967); *Wachsberger v. Michalis*, 19 Misc.2d 909, 191 N.Y.S.2d 621 (1959); *Village of Bronxville v. Francis*, 1 A.D.2d 236, 150 N.Y.S.2d 906 (1956), *aff'd*, 1 N.Y.2d 839, 153 N.Y.S.2d 220, 135 N.E.2d 724 (1956).

27. *Anderson v. Board of Appeals*, 22 Md.App. 28, 322 A.2d 220 (1974). *See also Spaulding v. Board of Appeals*, 334 Mass. 688, 138 N.E.2d 367 (1956); *Blackman v. Board of Zoning Appeals*, 334 Mass. 446, 136 N.E.2d 198 (1956); 1A C. Sands, Sutherland Statutory Construction § 21.12 (4th ed. 1972).

28. CBJ 49.25.802(c).

29. *State v. Lundquist*, 60 Wash.2d 397, 374 P.2d 246 (1962).

30. *See Bienz v. City of Dayton*, 29 Or.App. 761, 566 P.2d 904, 919–20 (1977), which rejected a

In our view, the express, unambiguous standards for granting variances in the Juneau ordinance decide the instant litigation.[31] The Juneau ordinance requires that "the peculiarities of the specific property render it difficult to carry out the provisions of this chapter."[32] At the hearing on the variance before the borough assembly, one of the assembly members asked the following question of Thibodeau:

Speaking of this same letter of July 31 from the Zoning Administration, one of the things that bothers me is that it says that the Board reached no formal conclusion or finding of fact in support of its action. I have gone through the Zoning—or the Planning Commission's minutes and so forth and I don't find that particular justification for a variance. It's a special treatment. I don't find where there's anything on the lot that's . . . any peculiarity of the lot that makes it different from any place else. Perhaps I missed something.[33]

Thibodeau replied, "The variance is on the number of parking stalls, it has nothing to do with the peculiarity of the lot. . . ."

Thibodeau further testified before the assembly that if the variance was granted, "I do expect to get a larger share of the grocery dollar of the people who are living in the Douglas community."

In our view, this testimony of the applicant Thibodeau provides conclusive support for the assembly's decision that the variance request did not fulfill the requirements of the ordinance and that, therefore, it should not have been granted by the board of adjustment.[34] Peculiarities of the specific property sufficient to warrant a grant of a variance must arise from the physical conditions of the land itself which distinguish it from other land in the general area.[35] The assertion that the ordinance merely deprives the landowner of a more profitable operation where the premises have substantially the same value for permitted uses as other property within the zoning classification argues, in effect, for the grant of a special privilege to the selected landowner.[36] We do not believe that the variance provision in the instant ordinance is intended to achieve such an inequitable

distinction in treatment of use and area variances by the court "[i]n the absence of statutory authorization."

31. The powers and duties of the board of adjustment are strictly limited to those prescribed by the ordinance governing variances. CBJ 49.25.802. *See also Ivancovich v. Tucson Bd. of Adjustment*, 22 Ariz.App. 530, 529 P.2d 242 (1974). The majority of jurisdictions hold that in construing zoning ordinances, the same rules of construction are used as when the courts are construing statutes of the legislature. *See* 1 N. Williams, American Land Planning Law §§ 5.03–5.04, at 105–06 (1974). We see no reason for adopting the minority rule that zoning ordinances are in derogation of the common law and therefore must be construed narrowly in favor of the right of the property owner to unrestricted use of his property. *See, e. g., State v. Owens*, 114 Ariz. 565, 562 P.2d 738 (App.1977); *Kiefer v. Luhnow*, 491 P.2d 100 (Colo.App.1977); *County of Clatsop v. Rock Island Constr., Inc.*, 5 Or.App. 15, 482 P.2d 541 (1971). As this court has previously stated: "[I]f a statute is unambiguous and expresses the intention of the legislature, it should not be modified or extended by judicial construction." *Poulin v. Zartman*, 542 P.2d 251, 270 (Alaska 1975). *See also Burroughs v.*

*Board of County Comm'rs*, 88 N.M. 303, 540 P.2d 233 (1975).

32. CBJ 49.25.802(c).

33. The assembly member was referring to the letter from the Zoning Administrator to Thibodeau informing him that the board of adjustment had granted his variance request.

34. Appellee's brief before this court does not attempt any further explanation of the peculiarities of the property which would make it eligible for a variance. Instead, Thibodeau relies on the superior court's decision that the uniqueness requirement does not apply to area variance cases.

35. *Erickson v. City of Portland*, 9 Or.App. 256, 496 P.2d 726 (1972). *See also* R. Anderson, American Law of Zoning §§ 18.34, 18.58 n.92 (2d ed. 1977).

36. *Topanga Ass'n for a Scenic Community v. County of Los Angeles*, 11 Cal.3d 506, 113 Cal.Rptr. 836, 846, 522 P.2d 12, 22 (1974). *See also Richards v. Turner*, 336 A.2d 581 (Del.Super.Ct.1975); *Glasgow v. Beaty*, 476 P.2d 75 (Okl.1970); 2 C. Rathkopf, The Law of Zoning and Planning § 45.3, at 45–8 (3d ed. 1972).

result.[37] Rather, where the ordinance equally affects all property in the same zoning classification, relief from the general conditions of the governing law properly must come from the assembly through an amendment to the zoning code.[38]

The judgment of the superior court is Reversed, and the decision of the city and borough assembly on the variance is Reinstated.[39]

BOOCHEVER, C. J., with whom CONNOR, J., joined, dissented.

MATTHEWS, J., not participating.

BOOCHEVER, Chief Justice, with whom CONNOR, Justice, joins, dissenting.

I dissent. While the area/use variance and disjunctive/conjunctive ordinance analyses developed by other jurisdictions and utilized by the majority are instructive, the Juneau ordinance in question presents us with a unique situation, and we must interpret it according to its own terms. It would be helpful to a careful analysis to set forth the relevant ordinance again. Section 49.25.802 of the Ordinances of the City & Borough of Juneau states in pertinent part:

(c) Variances. Where hardships and practical difficulties resulting from pecu-

liarities of a specific property render it difficult to carry out the provisions of this chapter, the board may grant a variance in harmony with the general purpose and intent of this chapter. Such variance may vary any standard requirement or regulation of this chapter after the prescribed hearing and after it is shown that all of the foregoing conditions exist:

(1) Compliance with the strict letter of the restrictions would unreasonably prevent the owner from using the property for a permitted purpose or would render a conformity with such restrictions unnecessarily burdensome;

(2) That a grant of the variance applied for would do substantial justice to the applicant as well as to other property owners in the district;

(3) Whether a lesser relaxation than that applied for would give substantial relief to the owner of the property involved and be more consistent with justice to other property owners;

(4) That relief can be granted in such a fashion that the spirit of the ordinance will be observed and public safety and welfare secured;

---

**37.** See generally Barbour v. District of Columbia Bd. of Zoning Adjustment, 358 A.2d 326 (D.C.App.1976); Uptown Improvement Ass'n, Inc. v. Board of Zoning Adjustments, 243 So.2d 345 (La.App.1971); Alumni Control Bd. v. City of Lincoln, 179 Neb. 194, 137 N.W.2d 800 (1965); Bailey v. Uhls, 503 P.2d 877 (Okl.1972).

**38.** Taxpayers Ass'n of South East Oceanside v. Board of Zoning Appeals, 301 N.Y. 215, 93 N.E.2d 645, 647 (1950); Appeal of Lindquist, 364 Pa. 561, 73 A.2d 378 (1950). Indeed, the Juneau assembly recognized that a legislative amendment to the zoning code was the appropriate approach to remedying the result reached in the present case. After denying the variance, the assembly passed a motion which directed the planning commission to review all its parking requirements and to look particularly at the possibility of an amendment that would allow a reduced number of parking spaces for stores having a predominantly "walk-in" trade.

We recognize, as does the dissent, that attractive cases may exist where, although the request for a variance is not motivated by any peculiarities of the property in question, the

absence of impact on the surrounding neighborhood alone makes the request for a variance reasonable. However, we have reservations as to whether the variance request in the case at bar is of this nature. Further, we are reluctant to create such a novel exception from the zoning ordinance, particularly in the face of the express language of CBJ 49.25.802. If a separate category of variances is warranted, it is for the legislature to so indicate.

**39.** Because of our disposition of this case is based on the lack of uniqueness of the property in question, we need not address the broader issue of delineating specific standards for the application of the "hardships and practical difficulties" language in the ordinance. We note, however, that in the particular context of the Juneau ordinance, our decision that the "hardships" portion of the test must be given some content does not bind us, as the dissent suggests, to the strict interpretations accorded that standard in some jurisdictions where the hardship test is modified by adjectives such as "undue" or "extreme." See note 25 supra.

(5) That the authorization of such variance will not be materially detrimental to the public welfare or injurious to nearby property;

(6) The variance does not allow the property to be used for uses not otherwise allowed in the district involved.

This ordinance differs from those governing the decisions of other states in two key respects. First, although it is couched in the conjunctive "hardships and practical difficulties" language, the Juneau ordinance does not modify the word "hardships" with any of the usual adjectives, such as "undue" or "extreme." Thus, it is more amenable to a single-test construction.[1] The application of a unitary standard is supported by A. Rathkopf, who, in his treatise, The Law of Zoning and Planning, observes:

> The overlapping of the concepts of practical difficulty and undue hardship in so many factual situations and the lack of real reason for treating the two situations differently, has caused the courts to treat the two terms as if they were synonymous and, in many instances, the enabling acts or ordinances so treat them.

2 Rathkopf, The Law of Zoning and Planning, 45–20 (2d ed. 1972). That the Juneau ordinance is such an ordinance is illustrated by its second major distinguishing characteristic. Unlike the ordinances governing the cited decisions from other jurisdictions, the ordinance before us codifies six criteria under which area variance applications must be judged, all of which must be present before the variance can be granted.

Section 49.25.802(c) of the ordinance is capable of two constructions. Either the first sentence represents a threshold test for an application which must be met before the six criteria may be applied, or the six criteria define "hardships and practical difficulties resulting from peculiarities of a specific property . . . ." Because there is no language in the ordinance hostile to the latter construction, there are several compelling reasons for adopting it.[2] There is no ready definition which can be culled from the cases for the term "hardships and practical difficulties." The subparts of section 49.25.802(c) provide a relatively simple, straightforward definition, which is already in the hands of those responsible for the execution of the ordinance. If the conditions set forth in subsections (1) and (2) are present, I fail to see how "hardships and practical difficulties" could be absent. Finally, the language of subsections (1)–(4) is almost identical to what Rathkopf has advanced as the proper test in area variance cases.[3]

1. Judge Stewart, in his scholarly opinion, likewise concluded that the terms should be given a single construction.

2. A similar result was achieved in *Beatrice Block Club Association v. Facen*, 40 Mich.App. 372, 198 N.W.2d 828 (Mich.App.1972), where the court applied the Detroit use variance ordinance. That ordinance, organized similarly to the area variance ordinance before us, contained an introductory statement that variances could be granted if there was "practical difficulty or unnecessary hardship," followed by three criteria that had to be met. *Id.* 198 N.W.2d at 831. The court held, "In order for the variance to have been properly granted, unnecessary hardship must appear in the record demonstrating the existence of the three requirements set forth in the ordinance." *Id.* at 832.

3. Rathkopf concludes:

> An analysis of the reported cases in which the emphasis was put upon the aspect of "practical difficulty" indicates that . . .

[t]he questions properly before the board of appeals on an application for a variance from "area restrictions," as such non-use restrictions have herein been collectively termed, are:

1) Whether compliance with the strict letter of the restrictions governing area, set backs, frontage, height, bulk or density would unreasonably prevent the owner from using the property for a permitted purpose or would render conformity with such restrictions unnecessarily burdensome.

2) Whether a grant of the variance applied for would do substantial justice to the applicant as well as to other property owners in the district, or whether a lesser relaxation than that applied for would give substantial relief to the owner of the property involved and be more consistent with justice to other property owners.

3) Whether relief can be granted in such fashion that the spirit of the ordinance will be observed and public safety and welfare secured.

Such a result, in my opinion, is more likely to conform to the intent of the Assembly in drafting the ordinance. The Juneau ordinance provides no mechanism for varying the "use" requirements. It is, of course, much more important that a neighborhood not be adversely affected by inappropriate use of property, than that area requirements for a permitted use be varied. I see no reason to engraft the "extreme" or "unusual" hardships requirements that have historically been required for use variances on the Juneau area variance requirements. The construction of the ordinance here suggested adequately protects the public interest, yet is not so rigid as to make it practically impossible to grant an area variance. There are countless cases involving the need for waivers, such as when a property owner wishes to build a garage and may have to go one foot over the sideline requirement under circumstances which do not adversely affect the public interest at all. Area variances of that type would be effectively prohibited under the majority's strict reading of the variance provision.

I think that Thibodeau presented a threshold case of hardship and practical difficulties. Because the order entered by the superior court directed the Planning Commission to make specific findings regarding the factors set forth in section 49.25.802(c), I would affirm.

In considering these basic questions the Board should take into consideration the nature of the zone in which the property lies, the character of the immediate vicinity and the uses contained therein, whether, if the restriction upon the applicant's property were removed, such removal would seriously affect such neighboring property and uses; whether, if the restriction is not removed, the restriction would have a tendency to create hardship (to any extent) to the owner in relation to his efforts to make normal improvements in the character of that use of the property which is a permitted use under the use provisions of the ordinance.

2 Rathkopf, The Law of Zoning and Planning, 45–28 to 29 (2d ed. 1972). It appears likely that the drafters of section 49.25.802(c) read Rathkopf and intended to incorporate his test into the ordinance. The ordinances in the cases cited from other jurisdictions predate even the first edition of Rathkopf's treatise.